**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WASHINGTON**

| | |
|---|---|
| ANDREW DEVIVO, on his own behalf and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SHEEX, INC.,<br><br>Defendant. | Case No. 3:25-cv-05807-DGE<br><br>**DEFENDANT SHEEX, INC.'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**<br><br>NOTE ON MOTION CALENDAR:<br>January 20, 2025<br><br>ORAL ARGUMENT REQUESTED |



**Benesch Friedlander Coplan & Aronoff, LLP**
100 Pine Street, Suite 3100
San Francisco, CA 94111
TEL (628) 600-2250 FAX (628) 221-5858

# TABLE OF CONTENTS


I. INTRODUCTION ..... 1

II. BACKGROUND ..... 2

III. LEGAL STANDARD ..... 3

IV. ARGUMENT ..... 4

A. Plaintiff Misrepresents the Challenged Emails and their Subject Lines ..... 4

B. Federal Law Preempts Plaintiff's CEMA Claim ..... 6

1. The CAN-SPAM Act expressly preempts state statutes that regulate commercial emails, like CEMA ..... 6

2. Only claims based on traditional tort theories, such as fraud, fall within the CAN-SPAM's Act's narrow exception to preemption ..... 7

3. Plaintiff's CEMA claim is not premised on fraud or deceit, so it is preempted by the CAN-SPAM Act ..... 9

C. Plaintiff Fails to Plead His CEMA Claim with Particularity ..... 15

1. Plaintiff Does Not Plead Any Elements of Fraud—Much Less with Particularity ..... 15

2. Plaintiff Fails to Allege the Challenged Subject Lines Are False or Deceptive ..... 15

D. Plaintiff's CPA Claim Falls with His Failed CEMA Claim ..... 16

E. Injunctive Relief is Inappropriate Because Plaintiff Does Not Allege Any Future Injury ..... 16

V. CONCLUSION ..... 17




**Benesch Friedlander Coplan & Aronoff, LLP**
100 Pine Street, Suite 3100
San Francisco, CA 94111
TEL (628) 600-2250 FAX (628) 221-5858

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Altria Group, Inc. v. Good*,
555 U.S. 70 (2008)....................6

*Asabre v. Retail Services & Systems, Inc.*,
No. C-15-CV-21-000459, 2023 WL 12187638 (Md. Cir. Ct. Feb. 12, 2023)....................9, 11, 12

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................3, 14

*Aventa Learning, Inc. v. K12, Inc.*,
830 F. Supp. 2d 1083 (W.D. Wash. 2011)....................12

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................14

*Benanav v. Healthy Paws Pet Ins.*,
LLC, 2021 WL 4319447 (W.D. Wash. Sept. 23, 2021)....................13

*Bly-Magee v. California*,
236 F.3d 1014 (9th Cir. 2001)....................4

*Brotherson v. Prof. Basketball Club, L.L.C.*,
604 F. Supp. 2d 1276 (W.D. Wash. 2009)....................11

*Brown v. Old Navy, LLC*,
567 P.3d 38 (Wash. 2025)....................10

*Brummett v. Washington's Lottery*,
288 P.3d 48 (Wash. Ct. App. 2012)....................12

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013)....................16

*Dahlstrom v. Life Care Centers of Am., Inc.*,
2023 WL 4893491 (W.D. Wash. Aug. 1, 2023)....................3

*Elcon Const., Inc. v. E. Washington Univ.*,
273 P.3d 965 (Wash. 2012)....................6, 9, 13

*Matter of Est. of Rule*,
2022 WL 3152591 (Wash. Ct. App. Aug. 8, 2022)....................14



**Benesch Friedlander Coplan & Aronoff, LLP**
100 Pine Street, Suite 3100
San Francisco, CA 94111
TEL (628) 600-2250 FAX (628) 221-5858

*Gordon v. Virtumundo, Inc.*,
575 F.3d 1040 (9th Cir. 2009) ............................................................................... *passim*

*Isomedia, Inc. v. Spectrum Direct, Inc.*,
2009 WL 10676391 (W.D. Wash. May 27, 2009)............................................................9, 13

*Joseph v. Amazon.com, Inc.*,
46 F. Supp. 3d 1095 (W.D. Wash. 2014).........................................................................15

*Kleffman v. Vonage Holdings Corp.*,
No. CV 07–2406GAFJ, 2007 WL 1518650 (C.D. Cal. May 23, 2007) ........................8, 13, 14

*Lewis v. Casey*,
518 U.S. 343 (1996)...........................................................................................................5

*Lucky Star Enters. III, LLC v. Wells Fargo Bank, N.A.*,
585 F. Supp. 3d 1297 (W.D. Wash. 2022).......................................................................17

*Martin v. CCH, Inc.*,
784 F. Supp. 2d 1000 (N.D. Ill. 2011) ..........................................................................9, 16

*Martin v. Miller*,
600 P.2d 698 (Wash. Ct. App. 1979)...............................................................................13

*McGinty v. Procter & Gamble Co.*,
69 F.4th 1093 (9th Cir. 2023) ..........................................................................................10

*Mostowfi v. i2 Telecom Int'l, Inc.*,
269 F. App'x 621 (9th Cir. 2008) .......................................................................................3

*Mostowfi v. i2 Telecom Int'l, Inc.*,
269 Fed. Appx. 621 (9th Cir. 2008)...................................................................................4

*Nicopure Labs, LLC v. Food & Drug Admin.*,
944 F.3d 267 (D.C. Cir. 2019)..........................................................................................16

*Omega World Travel, Inc. v. Mummagraphics, Inc.*,
469 F.3d 348 (4th Cir. 2006) ..................................................................................6, 7, 8, 14

*Roil Energy, LLC. v. Edington*,
2016 WL 4132471 (Wash. Ct. App. Aug. 2, 2016)..........................................................14

*Ross v. Sioux Honey Ass'n, Co-op.*,
Case No. C–12–1645 EMC, 2013 WL 146367 (N.D. Cal. Jan. 14, 2013).............................12

*Shellenberger v. AIG WarrantyGuard, Inc.*,
2024 WL 4144108 (W.D. Wash. Sept. 11, 2024)...............................................................11



**Benesch Friedlander Coplan & Aronoff, LLP**
100 Pine Street, Suite 3100
San Francisco, CA 94111
TEL (628) 600-2250 FAX (628) 221-5858

*Shellenberger v. AIG WarrantyGuard, Inc.*,
2025 WL 732874 (W.D. Wash. Feb. 3, 2025) ........ 10, 12, 13

*Silverstein v. Liquid Minds LLC*,
B.C. 375173 (Cal. Super. Ct., County of Los Angeles, August 18, 2009) ........ 9, 14

*Sperling v. DSW, Inc.*,
699 Fed. Appx. 654 (9th Cir. 2017) ........ 15

*State v. Heckel*,
122 Wash. App. 60, 93 P.3d 189 (2004) ........ 16

*Stiley v. Block*,
925 P.2d 194 (Wash. 1996) ........ 9

*Storey v. Amazon.com Servs. LLC*,
2024 WL 2882270 (W.D. Wash. June 7, 2024) ........ 10, 12, 13

*Summers v. Earth Island Inst.*,
555 U.S. 488 (2009) ........ 16

*Ticey v. Fed. Deposit Ins. Corp.*,
Case No. C22-1110 MJP, 2023 WL 4743913 (W.D. Wash. July 25, 2023),
*aff'd*, 2025 WL 671114 (9th Cir. Mar. 3, 2025) ........ 13

*Hendrix ex rel. United States v. J-M Mfg. Co., Inc.*,
76 F.4th 1164 (9th Cir. 2023) ........ 13

*Vess v. Ciba-Geigy Corp. USA*,
317 F.3d 1097 (9th Cir. 2003) ........ 15

*Whiteside v. Kimberly Clark Corp.*,
108 F.4th 771 (9th Cir. 2024) ........ 10

*Window World Int'l, LLC v. O'Toole*,
Case No. 4:19-cv-2363-SEP, 2020 WL 7041814 (E.D. Mo. Nov. 30, 2020) ........ 12

*Workman v. Plum Inc.*,
141 F. Supp. 3d 1032 (N.D. Cal. 2015) ........ 10

*Wright v. Lyft, Inc.*,
406 P.3d 1149 (Wash. 2017) ........ 10

**Statutes**

15 U.S.C. § 7701(a)(8) ........ 14

15 U.S.C. § 7701(a)(11) ........ 6



**Benesch Friedlander Coplan & Aronoff, LLP**
100 Pine Street, Suite 3100
San Francisco, CA 94111
TEL (628) 600-2250 FAX (628) 221-5858

15 U.S.C. § 7704(a)(2) ........ *passim*

15 U.S.C. § 7707(b)(1) ........ 1, 7

CAN–SPAM Act ........ 1, 7, 9

*CAN-SPAM Act* ........ 6, 9

CEMA ........ *passim*

Consumer Protection Act ........ 3

CPA ........ 10, 16

RCW 19.190.020(1) ........ 7

RCW 19.190.020(1)(b) ........ 3, 10, 15

RCW 19.190.040 ........ 5

Washington's 1998 Commercial Electronic Mail Act ........ 1

**Other Authorities**

Restatement (Second) of Torts § 525 ........ 9

Rule 8 ........ 15

Rule 9(b) ........ 3, 15

Rule 9(b)'s ........ 3, 15

Rule 12(b)(6) ........ 3

Rules 8 and 9(b) ........ 2

S. REP. 108-102, 2 ........ 14

United States Constitution Supremacy Clause ........ 6



**Benesch Friedlander Coplan & Aronoff, LLP**
100 Pine Street, Suite 3100
San Francisco, CA 94111
TEL (628) 600-2250 FAX (628) 221-5858

## I. INTRODUCTION

This case has nothing to do with fraud, or even consumer deception. While Plaintiff may cloak his allegations in statutory language concerning false and misleading conduct, Plaintiff does not claim that he—or anyone else—was ever misled by (or even noticed) the subject lines at issue here. Instead, this is a no-injury, strict-liability claim for statutory damages.

Specifically, Plaintiff Andrew Devivo ("Plaintiff") claims that SHEEX, INC. ("SHEEX") violated Washington's 1998 Commercial Electronic Mail Act ("CEMA"), an anti-spam statute enacted to regulate commercial email. The Complaint identifies fourteen (14) emails whose subject lines allegedly misrepresented the duration of a given sale, because the sales continued for a few hours or days longer than originally stated. As a result, Plaintiff claims that SHEEX violated CEMA's prohibition on sending a commercial e-mail that "[c]ontained false or misleading information in the subject line." (Compl. ¶ 95.)

To be clear: Plaintiff does not claim that these subject lines caused a single customer to make a purchase they otherwise would not have made, or even to open any email. He does not claim anyone ever even noticed the challenged subject lines. Indeed, he does not even claim to have received most of the 14 challenged emails. Nevertheless, he claims that SHEEX is strictly liable under CEMA—to the hefty price of $500 per recipient for each of the 14 emails—simply because they landed in the inboxes of Washington residents.

Plaintiff's CEMA claim is expressly preempted by the Controlling the Assault of Non-Solicited Pornography and Marketing ("CAN-SPAM") Act. By its very language, CAN-SPAM "supersedes any statute, regulation, or rule of a State or political subdivision of a State that expressly regulates the use of electronic mail to send commercial messages. . ." 15 U.S.C. § 7707(b)(1). While this provision contains a narrow carve-out for state laws prohibiting "falsity or deception," *id.*, the Ninth Circuit held that it only saves claims involving "traditionally tortious or wrongful conduct." *Gordon v. Virtumundo, Inc.*, 575 F.3d 1040, 1061–63 (9th Cir. 2009). "The CAN–SPAM Act established a national standard, but left the individual states free to extend traditional tort theories such as claims arising from fraud or deception to commercial e-mail communication." (*Id.* at 1064.)



**Benesch Friedlander Coplan & Aronoff, LLP**
100 Pine Street, Suite 3100
San Francisco, CA 94111
TEL (628) 600-2250 FAX (628) 221-5858

Here, Plaintiff does not allege "traditional tort theories," or anything like them. Plaintiff's Complaint sidesteps the essential elements of any tortious misrepresentation claim, including, reliance, materiality, and actual damages. Because the claim falls outside CAN-SPAM's narrow savings clause, it is preempted and must be dismissed. And to the extent Plaintiff tries to avoid preemption by now advancing a fraud theory, his claim fails under Rules 8 and 9(b). Either way, the Court should dismiss Plaintiff's Complaint with prejudice.

## II. BACKGROUND

Plaintiff is a Washington resident who claims to have received five emails from SHEEX in 2023:

- May 29, 2023 email with the subject line: "Final Hours for BIG Sitewide Savings."
- May 30, 2023 email with the subject line: "Memorial Day Sale EXTENDED! 25% Off Everything!"
- November 22, 2023 email with the subject line: "Early Access Black Friday Deal End Today!"
- November 24, 2023 email with the subject line: "Last Call for HUGE Black Friday Savings!"
- November 25, 2023 email with the subject line: "No, Really—Last Chance to Shop Black Friday Savings!"

(Compl. ¶ 66.) The Complaint does not attach any of these emails; however, because they are incorporated by reference, SHEEX attaches several of them hereto. (Declaration of William Price ("Price Decl."), Exh. A–C).

Plaintiff claims that the subject lines on these emails were "false or misleading" because they "misrepresent[ed] the timing of the deals." (Compl. ¶ 67.) Specifically, he claims that the email sent on May 29, 2023 (Memorial Day) with a subject line stating "Final Hours for BIG Sitewide Savings" is deceptive because the same savings were offered the next day. (*Id.* at ¶¶ 39–40.) Similarly, he claims the email sent on November 22, 2023 (the Wednesday before Black Friday) created a false sense of urgency, because SHEEX offered Black Friday deals for the next three days (i.e., Thanksgiving, Black Friday, and the day after Black Friday). (*Id.* at ¶¶ 43–47.)

Plaintiff does not claim to have noticed any of these five emails before filing this lawsuit. He does not claim that they tricked him (or anyone else) into taking any action whatsoever. Nor does he allege facts to suggest his theory that, at the time SHEEX sent the challenged emails, it allegedly intended to



**Benesch Friedlander Coplan & Aronoff, LLP**
100 Pine Street, Suite 3100
San Francisco, CA 94111
TEL (628) 600-2250 FAX (628) 221-5858

extend the challenged sales. Plaintiff does not claim to still be on SHEEX's email list, or to have received any email marketing from SHEEX in the last two years.

While the Complaint contains other purported "examples of SHEEX's commercial emails whose subject lines contain false or misleading statements" (*Id*. at ¶ 54 and Exhibit A), Plaintiff does not claim to have received them, does not attach his emails, and does not explain why he contends most of them are false or misleading. Nevertheless, he purports to bring a class action lawsuit on behalf of all Washington residents who received any of these emails.

Plaintiff brings two causes of action on behalf of himself and a putative class. First, he claims that SHEEX violated CEMA by sending emails that "[c]ontains false or misleading information in the subject line." RCW 19.190.020(1)(b). Second, he brings a derivative claim under the Consumer Protection Act (CPA), based solely on his theory that Defendants violated CEMA. He seeks statutory damages of $500 per violation, treble damages (that is, $1500 per email, per recipient), in addition to attorneys' fees and injunctive relief.

## III. LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Facial plausibility exists when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 677 (citing *Twombly*, 550 U.S. at 556). "[T]hreadbare recitals of the elements of a cause of action," "conclusory allegations of law," and "unwarranted inferences are insufficient." *Dahlstrom v. Life Care Centers of Am., Inc.*, 2023 WL 4893491, at *3 (W.D. Wash. Aug. 1, 2023) (citations omitted).

Further, claims that are "grounded" or "sound" in fraud are subject to Rule 9(b)'s heightened pleading standard. *Mostowfi v. i2 Telecom Int'l, Inc.*, 269 F. App'x 621, 623 (9th Cir. 2008). Rule 9(b) requires litigants to identify "the who, what, when, where, and how of the misconduct charged," and to explain "what is false or misleading about [the purportedly fraudulent] statement, and why it is false." *Cafasso, U.S. ex Rel. v. General Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (internal


**Benesch Friedlander Coplan & Aronoff, LLP**
100 Pine Street, Suite 3100
San Francisco, CA 94111
TEL (628) 600-2250 FAX (628) 221-5858

quotations and citations omitted). This heightened standard serves "to prohibit plaintiffs from unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual basis." *Bly-Magee v. California*, 236 F.3d 1014, 1018 (9th Cir. 2001). Failing to meet the requirement necessitates dismissal. *See Mostowfi v. i2 Telecom Int'l, Inc.*, 269 Fed. Appx. 621, 623 (9th Cir. 2008).

## IV. ARGUMENT

### A. Plaintiff Misrepresents the Challenged Emails and their Subject Lines

Plaintiff challenges two series of emails he received, relating to two of the biggest sales events of the year: Memorial Day and Black Friday, 2023. Plaintiff does not allege any facts concerning the emails, other than the dates they were sent and the text of the subject lines. Nor does he attach the challenged emails. Nonetheless, he claims that "**The subject lines of SHEEX's marketing emails make false time scarcity claims.**" (Compl. at p. 29 (emphasis in original); *see also id.* ¶ 7 (claiming Defendant "harass[es]" consumers), ¶ 5 (alleging "repeated false notifications that the time to act i. e. purchase—is short.").)

While Plaintiff attempts to frame this case as one involving affirmative misrepresentations, the emails themselves, which are incorporated by reference into the Complaint, tell a different story. Instead of making affirmative misrepresentations, the subject lines on the emails Plaintiff received accurately reflect that certain special promotions are ending soon.

For example, the May 29, 2023 email promoting a Memorial Day sale with the subject line "Final Hours for BIG Sitewide Savings" contains five different promotions: 25% sitewide, an "Extra 15%" stackable bonus, a free gift of an insulated tote, 40% a pillow, and free shipping. (Price Decl., ¶ 3, Ex. A.) Plaintiff claims that the subject line is not deceptive because "these weren't 'final hours' for [the 25% off] deal," (Compl. at ¶ 39), but the subject line never made any such representations. Plaintiff does not claim, because he cannot, that the other promotions—extra 15% off, free gift, and 40% the specified pillow—continued past May 29, 2025. And in fact, the May 30, 2023 email which Plaintiff cites as evidence of a fake extension, does not mention any of these other promotions. (Price Decl., ¶ 4, Ex. B.)

Plaintiff's claims as to the Black Friday emails similarly fail. On November 22, 2023, Defendant sent an email with the subject line "Early Access Black Friday Deals End Today!" (Price Decl., ¶ 5, Ex. C.) The plain language of this email provides email subscribers with "Early Access" to forthcoming



**Benesch Friedlander Coplan & Aronoff, LLP**
100 Pine Street, Suite 3100
San Francisco, CA 94111
TEL (628) 600-2250 FAX (628) 221-5858

"Black Friday Deals." (*Id.*) It does not promise, as Plaintiff suggested, that all Black Friday deals would end on November 22, 2023—the day *before* Black Friday. Cf. Compl. at ¶ 44 (claiming the subject line "simply wasn't true" because the "Black Friday Deals" continued through Black Friday weekend). This reading is consistent with the body of the email, which states "Final Day for Black Friday Early Access Doorbusters!" and "Black Friday Deals Start Now!" (Price Decl., ¶ 5, Ex. C.) But regardless, the November 22, 2023 email contained certain deals that, by their plain language, *did* end on November 22, 2023. Under a header, "Final Hours To Save BIG On These Featured Deals," the email promoted 50% off supporting pillows and an extra 15% off pajamas. (*Id.*) Plaintiff does not (and cannot) allege that these featured deals did not, in fact, end on November 22, 2023.

On November 24 and 25, 2023 (the Saturday and Sunday after Black Friday), SHEEX sent emails with the subject lines, "Last Call for HUGE Black Friday Savings!" and "No, Really—Last Chance to Shop Black Friday Savings!" He does not claim (nor could he), however, that the promotions in those emails did not, in fact, end on November 25, 2023. Nor does he explain why it was deceptive to advertise a "last call" the day before the Black Friday promotion ended.

Thus, on their face, the challenged subject lines are not false or deceptive. Instead, they accurately inform consumers that the emails contain certain deals that were ending soon. At best, then, Plaintiff's grievance is that SHEEX should have used the subject line to specify which of its many deals were ending, and when. As discussed below, such claims are preempted under CAN-SPAM, and in any event, cannot support a CEMA claim.

And while the Complaint discusses numerous other emails, Plaintiff does not claim to have received any of them and thus cannot bring claims based on their subject lines. RCW 19.190.040 (only providing for damages "to the recipient of a commercial electronic mail message.") In any event, Plaintiff lacks standing to sue as to emails that did not injure him. *Lewis v. Casey*, 518 U.S. 343, 357 (1996) (to establish Article III standing, a named plaintiff must "personally have been injured"; it is not enough that the injury was "suffered by other, unidentified members of the class.")



**Benesch Friedlander Coplan & Aronoff, LLP**
100 Pine Street, Suite 3100
San Francisco, CA 94111
TEL (628) 600-2250 FAX (628) 221-5858

### B. Federal Law Preempts Plaintiff's CEMA Claim

#### *1. The CAN-SPAM Act expressly preempts state statutes that regulate commercial emails, like CEMA*

Under the Supremacy Clause of the United States Constitution (Article VI Clause 2), "state laws that conflict with federal law are 'without effect.'" *Altria Group, Inc. v. Good*, 555 U.S. 70, 76 (2008) (citations omitted). When enacting law, Congress can expressly preempt state laws by "explicitly defin[ing] the extent to which its enactments preempt state law." *Virtumundo, Inc.*, 575 F.3d at 1060.

Congress expressed its intent to preempt state laws regulating commercial electronic mail when it enacted the CAN-SPAM Act in 2003, five years after CEMA's enactment. Before CAN-SPAM, many states had "enacted legislation intended to regulate or reduce unsolicited commercial electronic mail, but th[ose] statutes impose[d] different standards and requirements." 15 U.S.C. § 7701(a)(11). With the patchwork of laws regulating commercial mail, it was "extremely difficult" for businesses to know which statutes they were required to comply with, as email addresses do "not specify a geographic location." *Id.* Those state statutes thus failed to "address[] the problems associated with unsolicited commercial electronic mail." *Id.* To resolve this issue, Congress replaced the previous incongruent state regulations with a uniform national law. *See id.* § 7701(b)(1).

In drafting CEMA, Congress struck a "careful balance" between preserving a "useful commercial tool [email] and preventing its abuse." *Omega World Travel, Inc. v. Mummagraphics, Inc.*, 469 F.3d 348, 354 (4th Cir. 2006). Thus, CAN-SPAM only bans commercial emails where a subject line is: (i) "*likely* to mislead a recipient" about (ii) "a *material* fact regarding the contents or subject matter of the message," and (iii) where the sender had "*actual knowledge*," or "*knowledge fairly implied* on the basis of objective circumstances," of such falsity. 15 U.S.C. § 7704(a)(2) (emphasis added). It is not coincidental that these requirements mirror the elements of traditional tort theories, such as common law claims for fraud or deceit. *See Elcon Const., Inc. v. E. Washington Univ*., 273 P.3d 965, 970 (Wash. 2012) ("*Elcon*").

To prevent states from diluting these requirements and to ensure that CAN-SPAM serves as a uniform national standard, CAN-SPAM expressly preempts any state law regulating commercial email, subject only to a "limited, narrow exception." *Virtumundo*, 575 F.3d at 1061. The statute states:



**Benesch Friedlander Coplan & Aronoff, LLP**
100 Pine Street, Suite 3100
San Francisco, CA 94111
TEL (628) 600-2250 FAX (628) 221-5858

> *This chapter supersedes any statute . . . of a State . . . that expressly regulates the use of electronic mail to send commercial messages*, except to the extent that any such statute . . . prohibits falsity or deception in any portion of a commercial electronic mail message or information attached thereto.

15 U.S.C. § 7707(b)(1) (emphasis added). As the Ninth Circuit found, this language "demonstrates Congress's intent that the CAN–SPAM Act broadly preempt state regulation of commercial e-mail." *Virtumundo*, 575 F.3d at 1061.

***2. Only claims based on traditional tort theories, such as fraud, fall within the CAN-SPAM's Act's narrow exception to preemption***

RCW 19.190.020(1) unquestionably "expressly regulates the use of electronic mail to send commercial messages." 15 U.S.C. § 7707(b)(1); *see also* RCW 19.190.020(1) (prohibiting certain "commercial electronic mail message[s]."). Thus, claims under RCW 19.190.020(1) are preempted unless they fall within CAN-SPAM's savings clause applies. They do not.

Courts have construed CAN-SPAM's savings clause narrowly. As noted above, CAN-SPAM exempts from preemption state laws that prohibit "falsity or deception in any portion of a commercial [e]mail." 15 U.S.C. § 7707(b)(1). The Ninth Circuit has held that this exception applies only to state-law claims based on "traditional tort theories such as claims arising from fraud or deception." *Virtumundo*, 575 F.3d at 1063. This narrow reading comports with CAN-SPAM's "structure as a whole and the stated legislative purpose," discussed above, as well as the holdings of the Fourth Circuit. *Id.*

Before the Ninth Circuit's holding, the Fourth Circuit addressed whether CAN-SPAM preempted claims brought under Oklahoma's CEMA analogue. *See Omega*, 469 F.3d at 352–56. In assessing whether CAN-SPAM preempted the plaintiff's claim, the Fourth Circuit noted that the link between "falsity and deception" in the savings clause "suggests that Congress was operating in the vein of tort when it drafted the pre-emption clause's exceptions, and intended falsity to refer to other torts involving misrepresentations, rather than to sweep up errors that do not sound in tort." *Id.* at 354 (emphasis added). Because the plaintiff sought to impose liability for immaterial representations that reached "beyond common law fraud or deceit," the court held that his claim was preempted. *Id.* at 353.



**Benesch Friedlander Coplan & Aronoff, LLP**
100 Pine Street, Suite 3100
San Francisco, CA 94111
TEL (628) 600-2250 FAX (628) 221-5858

Three years later, in *Virtumundo*, the Ninth Circuit held that CAN-SPAM preempted the plaintiff's claim under CEMA based on email header information that allegedly obscured the sender's identity. 575 F.3d at 1058. The court "reach[ed] the same conclusion" as the Fourth Circuit in *Omega*. *Id.* at 1061–62. Like the Fourth Circuit, the Ninth Circuit explained that CAN-SPAM's preemption exception is "narrow," "limited" and reserved for claims involving "traditionally tortious or wrongful conduct." *Id.* Consequently, the Ninth Circuit held that only claims resembling a "tort action based on misrepresentations"—like common-law fraud or deceit claims—survive preemption. *Id.* The Ninth Circuit agreed with the Fourth Circuit that a contrary reading of the preemption exception would create a "loophole so broad that it would virtually swallow the preemption clause itself." *Id.* at 1061. Because the plaintiff's CEMA claim had "no basis in traditional tort theories," the Ninth Circuit concluded his claim was preempted. *Id.* at 1064.

Preemption is also supported by the fact that CAN-SPAM requires materiality and scienter—elements that CEMA does not require, and that Plaintiff does not allege. *Virtumundo*, 575 F.3d at 1063; *Omega*, 469 F.3d at 354; *see also* 15 U.S.C. § 7704(a)(2) (expressly requiring sender's "knowledge" of falsity to impose liability). "It would be logically incongruous to conclude that Congress endeavored to erect a uniform standard but simultaneously left states and local lawmakers free to manipulate that standard to create more burdensome regulation." *Virtumundo*, 575 F.3d at 1063. Under such an approach, a single state's strict laws would "become a de facto national standard" — "undermin[ing] to the point of near-irrelevancy" the "national standard" that Congress created, and creating a "loophole so broad that it would virtually swallow the preemption clause itself." *Omega*, 469 F.3d at 355; *accord Virtumundo*, 575 F.3d at 1061.

In line with the Ninth and Fourth Circuits, numerous district courts have also dismissed claims under various CEMA analogues as preempted where the plaintiff failed to allege a traditional tort theory. *See Kleffman v. Vonage Holdings Corp.*, No. CV 07–2406GAFJ, 2007 WL 1518650, at *2-*3 (C.D. Cal. May 23, 2007) (holding that plaintiff's claims under California's consumer-protection statutes were "clearly preempted" because he did "not allege a traditional tort theory at all, or even that he was at any point mislead by any of the . . . emails" and the emails did not contain any "misrepresentation in any



**Benesch Friedlander Coplan & Aronoff, LLP**
100 Pine Street, Suite 3100
San Francisco, CA 94111
TEL (628) 600-2250 FAX (628) 221-5858

ordinary sense of the word"); *Martin v. CCH, Inc.*, 784 F. Supp. 2d 1000, 1007 (N.D. Ill. 2011) (holding that "less than comprehensive information outside the body of an e-mail is at its best a technical allegation that finds no basis in traditional tort theories and thus falls within CANSPAM's express preemption clause (and outside the exception)"); *Silverstein v. Liquid Minds LLC*, B.C. 375173 (Cal. Super. Ct., County of Los Angeles, August 18, 2009) (minute order) (holding that California's anti-SPAM statute is preempted by CAN-SPAM based on "strict statutory interpretation"); *see also Asabre v. Retail Services & Systems, Inc.*, No. C-15-CV-21-000459, 2023 WL 12187638, *3-4 (Md. Cir. Ct. Feb. 12, 2023). Applying these authorities, Plaintiff cannot cram his case into CAN-SPAM's narrow savings clause without establishing the elements of traditional misrepresentation torts, which he does not even attempt to plead.

### *3. Plaintiff's CEMA claim is not premised on fraud or deceit, so it is preempted by the CAN-SPAM Act*

Plaintiff relies on the exact type of strict-liability theory unfounded in fraud or deceit that Congress intended to preempt. He does not make any of the necessary allegations to prove a tort claim.

Traditional misrepresentation tort theories, such as fraud, typically require nine elements:

> (1) representation of an existing fact; (2) materiality; (3) falsity; (4) the speaker's knowledge of its falsity; (5) intent of the speaker that it should be acted upon by the plaintiff; (6) plaintiff's ignorance of its falsity; (7) plaintiff's reliance on the truth of the representation; (8) plaintiff's right to rely upon it; and (9) damages.

*Stiley v. Block*, 925 P.2d 194, 204 (Wash. 1996); accord Restatement (Second) of Torts § 525 (claim for "fraudulent misrepresentation" requires fraudulent intent, "justifiable reliance upon the misrepresentation," causation, and "pecuniary loss"). As noted above, these requirements generally mirror those set forth in CAN-SPAM. *See* 15 U.S.C. § 7704(a)(2); *Elcon Const., Inc. v. E. Wash. Univ.*, 273 P.3d 965, 970 (Wash. 2012). Thus, as the Ninth Circuit explained, "The CAN–SPAM Act established a national standard but left the individual states free to extend traditional tort theories such as claims arising from fraud or deception to commercial e-mail communication." *Virtumundo*, 575 F.3d at 1064.

Just as CEMA requires less than CAN-SPAM, it also requires far less than common law fraud. *Isomedia, Inc. v. Spectrum Direct, Inc.*, 2009 WL 10676391, at *3–4 (W.D. Wash. May 27, 2009) (the



**Benesch Friedlander Coplan & Aronoff, LLP**
100 Pine Street, Suite 3100
San Francisco, CA 94111
TEL (628) 600-2250 FAX (628) 221-5858

"required elements of a claim under CEMA" do not "include all the elements of common law fraud."). And unlike a tort claim for fraud—or a false advertising claim under the CPA—statutory damages under CEMA are available regardless of whether the plaintiff suffered any injury caused by the challenged representation. *Wright v. Lyft, Inc.*, 406 P.3d 1149, 1154 (Wash. 2017) (holding that CEMA "does not condition the award of damages on proving either injury or causation"); *accord Brown v. Old Navy, LLC*, 567 P.3d 38, 42 (Wash. 2025) ("CEMA's $500 penalty does not require a showing of actual damages.").

Plaintiff anchors his claim on CEMA's per-se-violation and statutory-damages provisions, foregoing any allegations that could establish the elements of a traditional tortious misrepresentation claim. (*See* Compl. ¶¶ 88–91.) Plaintiff thus advances the very kind of strict-liability theory that CAN-SPAM preempts—without alleging the elements of a traditional fraud or deceit claim. As a result, this Court need not decide whether all claims under RCW 19.190.020(1)(b) are facially preempted or whether a plaintiff could survive preemption by pleading the additional elements required to establish a traditional fraud or deceit claim. Because Plaintiff does not even attempt to plead a theory of liability based on the elements of traditional torts, his individual claim cannot survive preemption.

**No Fraudulent Conduct**: A plaintiff cannot state a claim for fraud without identifying fraudulent conduct. Thus, not only are falsity or deception required to allege a CEMA violation (*see* Section C.1, *infra*), they are also required to avoid CAN-SPAM preemption.

Here, there is nothing fraudulent about failing to include every term in the subject line of an email. After all, "[e]very reasonable shopper knows that the devil is in the details." *Workman v. Plum Inc.*, 141 F. Supp. 3d 1032, 1035 (N.D. Cal. 2015); *see also Shellenberger v. AIG WarrantyGuard, Inc.*, 2025 WL 732874, at *6 (W.D. Wash. Feb. 3, 2025) ("after reading Defendants' offer, a reasonable consumer would realize that it does not contain all applicable terms and conditions, and the consumer would know to follow the link in the disclaimer to view the terms and conditions.") (currently on appeal). Rather than rely on assumptions about ambiguous statements, reasonable consumers seek out clarifying information. *McGinty v. Procter & Gamble Co.*, 69 F.4th 1093, 1096 (9th Cir. 2023) (applying California law); *Whiteside v. Kimberly Clark Corp.*, 108 F.4th 771, 780 (9th Cir. 2024) (same); *Storey v. Amazon.com Servs. LLC*, 2024



**Benesch Friedlander Coplan & Aronoff, LLP**
100 Pine Street, Suite 3100
San Francisco, CA 94111
TEL (628) 600-2250 FAX (628) 221-5858

WL 2882270, at *7 (W.D. Wash. June 7, 2024). Plaintiff cannot plead deceptiveness by relying solely on the text of the allegedly violative subject lines.

No reasonable consumer would be misled simply because a *subject line* of an email does not spell out every condition of the advertised sale, especially where the details of the sales were disclosed in the body of each email itself—exactly where a reasonable consumer would expect to find any applicable terms and conditions. *See Shellenberger v. AIG WarrantyGuard, Inc*., 2024 WL 4144108, at *8 (W.D. Wash. Sept. 11, 2024) (finding case law "overwhelmingly supports Defendants' position that a consumer cannot plead deception" based on purportedly "surprise" terms that were "fully and sufficiently disclosed to her, but that she failed to read"); *Brotherson v. Prof. Basketball Club, L.L.C*., 604 F. Supp. 2d 1276, 1285 (W.D. Wash. 2009) ("[A] party who accepts a written offer without reading it nonetheless objectively manifests his or her assent to its terms."). Requiring every term and condition of a sale to be *additionally* disclosed in the subject line of an email would defeat the very purpose of a subject line—to provide the reader with a pithy description of the topic of the email, not convey the entirety of an email message or all sale terms. Subject lines containing dense, redundant disclosures would defeat this purpose.

*Asabre v. Retail Services & Systems, Inc.*, is instructive. There, the plaintiff alleged that the defendant violated Maryland's CEMA analog by sending emails with "subject lines that promise that the recipient will receive discounts on the purchase of products from Defendant's stores," but "if the recipient opens the email, it becomes clear that the discounts are conditioned or restricted to certain items and certain purchases." *Asabre*, 2023 WL 12187638 at *2. The *Asabre* court squarely rejected the plaintiff's argument that these subject lines were "misleading, or even potentially misleading," explaining:

> [T]he subject line is not required to include every conceivable limitation on an offer. **No reasonable person would conclude from the . . . subject line that there are no limitations. . . .** The fact that a consumer must buy a minimum [amount to activate the sale] . . . is not enough to make the subject line misleading, or even potentially misleading.

*Id.* at *4 (emphasis added). A contrary finding, the court noted, would be "completely unworkable" as "no subject line could ever comply with the MCEMA because there would always be some meaningful



**Benesch Friedlander Coplan & Aronoff, LLP**
100 Pine Street, Suite 3100
San Francisco, CA 94111
TEL (628) 600-2250 FAX (628) 221-5858

limitation that is not in the subject line." *Id.* ("Under Plaintiff's analysis, **virtually every email offer** would violate MCEMA because it did not contain all limitations on the offer.") (emphasis in original).

**No Materiality**: Plaintiff does not adequately plead that SHEEX's alleged misrepresentations were material — a requirement for litigants bringing traditional fraud claims, which the Ninth Circuit has made clear is required to survive preemption. *Virtumundo* at 1059 (claims based on "immaterial misstatements" are preempted); *id.* at 1061–62 (stressing that "materiality component comport[s] with the policy pursued by the federal legislation as a whole"); *id.* at 1065 (only claims premised on "material" misstatements survive preemption) (emphasis in original); *id.* at 1065 (requiring "something of material importance") (emphasis in original). "A material misrepresentation is one to which a reasonable person would attach importance when determining whether to participate in a transaction." *Aventa Learning, Inc. v. K12, Inc.*, 830 F. Supp. 2d 1083, 1099 (W.D. Wash. 2011).

Here, Plaintiff has not established that any of the alleged misstatements were material. In fact, the Complaint does not mention materiality once. Even if it did, "mere conclusory statements, such as assertions concerning the materiality [] to ordinary consumers, do not suffice to state a plausible claim in federal court." *Ross v. Sioux Honey Ass'n, Co-op.*, Case No. C–12–1645 EMC, 2013 WL 146367, at *18 n.9 (N.D. Cal. Jan. 14, 2013); *see also Window World Int'l, LLC v. O'Toole*, Case No. 4:19-cv-2363-SEP, 2020 WL 7041814, at *4 (E.D. Mo. Nov. 30, 2020) ("bare allegation" that statement satisfies the legal standard for materiality fails absent "facts to support such inferences").

Under Washington law, statements that are alleged to create a false sense of urgency are not material. *Brummett v. Washington's Lottery*, 288 P.3d 48, 55 (Wash. Ct. App. 2012) (holding advertisement claiming tickets were "going fast" was not "something of material importance"). Therefore, the allegedly violative subject lines cannot be material.

Additionally, no reasonable consumer would expect a subject line to exhaustively recite all details of a sale. *Storey*, 2024 WL 2882270, at *6; *Shellenberger*, 2025 WL 732874, at *6. Because the details of the sales were prominently emphasized in the body of each email (*see generally* Price Decl., ¶¶ 3-5, Exs. A–C)—exactly where a reasonable consumer would expect to find sale information—Plaintiff does not plausibly allege that any misstatement in the subject lines would be material to a reasonable consumer.



**Benesch Friedlander Coplan & Aronoff, LLP**
100 Pine Street, Suite 3100
San Francisco, CA 94111
TEL (628) 600-2250 FAX (628) 221-5858

Moreover, to satisfy this element the subject lines must be material to Plaintiff, personally. *See Elcon*, 273 P.3d at 970–71 (holding materiality absent because alleged misstatements were not material *to the plaintiff*); *Martin v. Miller*, 600 P.2d 698, 700 (Wash. Ct. App. 1979) (analyzing whether "representations were *material to the plaintiffs' decision* to enter into a purchase and marketing agreement with the defendant") (emphasis added); *Hendrix ex rel. United States v. J-M Mfg. Co., Inc.*, 76 F.4th 1164, 1169 & n.5 (9th Cir. 2023) (focusing on whether the alleged misstatement was "*material to [the plaintiff's] decision-making*") (emphasis added). Plaintiff does not allege that he personally read the challenged subject lines and felt "pressure to buy immediately." (Compl. at ¶ 30.) Instead, Plaintiff alleges that a hypothetical consumer might feel a "false sense of urgency" upon reading a subject line in issue. (*Id.* at ¶ 4.); *see Storey v. Amazon.com Servs. LLC*, 2024 WL 2882270, at *7 (W.D. Wash. June 7, 2024) (finding reasonable consumer would "read all of the terms and conditions"); *Shellenberger*, 2025 WL 732874, at *6 ("[A]fter reading Defendants' offer, a reasonable consumer would realize that it does not contain all applicable terms and conditions, and the consumer would know to follow the link in the disclaimer to view the terms and conditions"). This is insufficient.

**No Reliance**: Plaintiff does not claim to have read, much less relied on, any of the challenged subject lines. This failure dooms any potential fraud theory. *Benanav v. Healthy Paws Pet Ins.*, LLC, 2021 WL 4319447, at *10 (W.D. Wash. Sept. 23, 2021) (dismissing fraud claim because "nowhere does [the complaint] allege that Plaintiffs actually reviewed and/or relied upon" alleged misstatements) (emphasis added); *Ticey v. Fed. Deposit Ins. Corp.*, Case No. C22-1110 MJP, 2023 WL 4743913, at *2 (W.D. Wash. July 25, 2023), *aff'd*, 2025 WL 671114 (9th Cir. Mar. 3, 2025) (dismissing complaint that "failed to provide sufficiently detailed and particularized allegations" establishing how plaintiffs "justifiabl[y] relied on the misstatements" to their detriment). His bare allegation to have "received" the emails (Compl. at ¶ 66) "is not the same as an allegation that anyone acted in reliance upon the information contained in it." *Isomedia*, 2009 WL 10676391, at *4.

For example, in *Kleffman v. Vonage Holdings Corp.*, 2007 WL 1518650, at *3 (C.D. Cal. May 23, 2007), the court found the plaintiff's claims were "clearly preempted" because the complaint "does not allege a traditional tort theory at all, or even that he was at any point mislead by any of the eleven Vonage


**Benesch Friedlander Coplan & Aronoff, LLP**
100 Pine Street, Suite 3100
San Francisco, CA 94111
TEL (628) 600-2250 FAX (628) 221-5858

emails." *Id.* (emphasis added). The Ninth Circuit cited this language favorably in *Virtumundo*. 575 F.3d at 1063–64; *see also Silverstein v. Liquid Minds LLC*, B.C. 375173 (Cal. Super. Ct., County of Los Angeles, August 18, 2009) (minute order) (finding section 17529.5 claim preempted because it was based on strict statutory interpretation).

**No Actual Injury**: Actual damages are a requirement of any fraud claim. *Roil Energy, LLC. v. Edington*, 2016 WL 4132471, at *18 (Wash. Ct. App. Aug. 2, 2016) (holding plaintiff's cause of action for fraud should have been dismissed because he "failed to prove that he suffered any damages"). Here, Plaintiff pleads none. He does not allege, for example, that he made any shopping decision to his detriment based on the allegedly inflated discounts or promotional period advertised. Nor could he, as he does not even allege that he ever noticed or opened any of the allegedly violative emails. Rather, Plaintiff requests only statutory damages, omitting any allegations of actual harm.

**Scienter**: Plaintiff does not plausibly allege that SHEEX knew that the subject lines were false or misleading or intended to mislead Plaintiff, as required to establish traditional fraud or deceit. *Matter of Est. of Rule*, 2022 WL 3152591, at *3 (Wash. Ct. App. Aug. 8, 2022) (affirming dismissal of plaintiff's fraud claim for failing to allege that defendant knew the representation was false or that defendant intended to mislead the plaintiff); *Omega*, 469 F.3d at 353–54 (fraud tort requires sender "knew" statements were false). This requirement accords with Congress's specific focus on persons "seek[ing] to defraud consumers," S. REP. 108-102, 2, by "purposefully" sending misleading information, as reflected in CAN-SPAM. 15 U.S.C. § 7701(a)(8) (emphasis added); 15 U.S.C. § 7704(a)(2) (requiring "knowledge" of falsity). Not only did Plaintiff fail to plead SHEEX's knowledge or intent, but there is an "obvious alternative explanation"—SHEEX choose to extend the sale, after sending the original emails. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 567 (2007). Given this alternative, inferring scienter is not a "plausible conclusion." *Ashcroft v. Iqbal*, 556 U.S. 662, 682 (2009).

In summary, Plaintiff does not plausibly allege that Defendant engaged in traditional fraud or deceit, as required to survive preemption. Plaintiff fails to plead that he relied on any of the allegedly misleading email subject lines, that he suffered any actual harm, that the email subject lines were materially false or misleading, or that Defendant knew the subject lines were false or misleading. Since



**Benesch Friedlander Coplan & Aronoff, LLP**
100 Pine Street, Suite 3100
San Francisco, CA 94111
TEL (628) 600-2250 FAX (628) 221-5858

Plaintiff does not allege that Defendant engaged in traditionally tortious conduct, Plaintiff's CEMA claim does not fall within CAN-SPAM's narrow savings clause. His claim is preempted, and dismissal is required.

### C. Plaintiff Fails to Plead His CEMA Claim with Particularity

As discussed above, the only way for Plaintiff to avoid preemption by CAN-SPAM is to plead a claim that sounds in fraud. For any claim that sounds in fraud, however Rule 9(b)'s heightened pleading standard applies. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003) (a claim need not specifically be a plain "fraud" claim for the rule to apply).

#### *1. Plaintiff Does Not Plead Any Elements of Fraud—Much Less with Particularity*

As discussed above, Plaintiff omits several elements of a traditional misrepresentation tort claim from his theory of liability, including injury, materiality, reliance and scienter. Plaintiff's failure to allege these elements – even at a conclusory level - prevent him from plausibly stating a claim that avoids preemption. His claims fall especially short of Rule 9(b). *See*, *e.g.*, *Joseph v. Amazon.com, Inc.*, 46 F. Supp. 3d 1095, 1109 (W.D. Wash. 2014) (dismissing plaintiff's fraud claim for merely alleging that Amazon made a false statement, and failing to allege how the misrepresentation was material, or that he rightfully relied upon it to his detriment).

#### *2. Plaintiff Fails to Allege the Challenged Subject Lines Are False or Deceptive*

The Complaint asserts, many times, that the challenged emails are "false and deceptive." These conclusory labels are insufficient under Rule 9(b). *See*, *e.g.*, *Cafasso, U.S. ex Rel. v. General Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (Plaintiff must allege "what is false or misleading about [the purportedly fraudulent] statement, and why it is false."). Instead, Plaintiff must both explain why a challenged statement is false or deceptive and also allege facts to support his claim that the statement is actually false or deceptive. *Sperling v. DSW, Inc.*, 699 Fed. Appx. 654, 655 (9th Cir. 2017) (affirming dismissal of claim that sales were illusory, where "allege sufficient facts to show with particularity how [and] why" the reference prices on the items they purchased were false or deceptive.)

Under Rule 8, Plaintiff must also plausibly allege that the subject line actually "[c]ontains false or misleading information in the subject line." RCW 19.190.020(1)(b). Washington Courts have not defined


**Benesch Friedlander Coplan & Aronoff, LLP**
100 Pine Street, Suite 3100
San Francisco, CA 94111
TEL (628) 600-2250 FAX (628) 221-5858

"misleading" as used within CEMA. However, in finding this term not vague, the Washington Court of Appeal appears to have adopted the meaning as used in the Supreme Court's Central Hudson test for free speech. *State v. Heckel*, 122 Wash. App. 60, 72, 93 P.3d 189, 194 (2004) (citing *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557, at 566 (1980).) *Central Hudson*, in turn, looks to whether "consumers acting reasonably under the circumstances" are likely to be deceived. *Nicopure Labs, LLC v. Food & Drug Admin.*, 944 F.3d 267, 287 (D.C. Cir. 2019). This is consistent with CAN-SPAM, which only applies where a subject line is "would be likely to mislead a recipient, acting reasonably under the circumstances." *See* 15 U.S.C. § 7704(a)(2).[1]

Here, as discussed above, Plaintiff does not allege any misrepresentation by Defendant in the subject lines he received. Nor can Plaintiff allege false or misleading conduct through his claim that the subject lines should have contained additional information about when each promotion within the email would end. *See* Section A, *supra.*

**D. Plaintiff's CPA Claim Falls with His Failed CEMA Claim**

Plaintiff's CPA claim is based wholly on SHEEX's alleged CEMA violations. (See Compl. at ¶¶ 89–96.) Because Plaintiff's CEMA claim fails, his CPA claim is similarly "inadequate" and should be dismissed. *Virtumundo*, 575 F.3d at 1065.

**E. Injunctive Relief is Inappropriate Because Plaintiff Does Not Allege Any Future Injury**

To seek prospective injunctive relief, Plaintiff must allege that the future threat of injury must be "actual and imminent, not conjectural or hypothetical." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009). In other words, the "threatened injury must be certainly impending; allegations of possible future injury are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013). Plaintiff has not alleged *any* future threat of injury but merely asserted that class members are "entitled to an injunction."

[1] To the extent Plaintiff claims that CEMA provides a laxer standard, such claims are preempted. *See, e.g., Martin v. CCH, Inc.*, 784 F. Supp. 2d 1000, 1006 (N.D. Ill. 2011).



**Benesch Friedlander Coplan & Aronoff, LLP**
100 Pine Street, Suite 3100
San Francisco, CA 94111
TEL (628) 600-2250 FAX (628) 221-5858

(Compl. at ¶ 95.) Further, Plaintiff has unsubscribed from SHEEX's email marketing list and thus is under no threat of receiving any future emails.

## V. CONCLUSION

Because Plaintiff's strict-liability theory cannot survive preemption on any set of facts, amendment would be futile, and the Complaint should be dismissed with prejudice. See *Lucky Star Enters. III, LLC v. Wells Fargo Bank, N.A.*, 585 F. Supp. 3d 1297, 1304 (W.D. Wash. 2022) (dismissing preempted claims with prejudice). For the forgoing reasons, the Complaint should be dismissed with prejudice.

I certify that this memorandum contains 6,363 words, in compliance with the Local Civil Rules.

Dated: December 12, 2025

Respectfully submitted,

*/s/ Meegan B. Brooks*
MEEGAN B. BROOKS (WA 62516)
BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP
100 Pine Street, Suite 3100
San Francisco, CA 94111
Telephone: 628.600.2232
Email: mbrooks@beneschlaw.com

*Attorney for Defendant SHEEX, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 12th day of December 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, which in turn automatically generated a Notice of Electronic Filing (NEF) to all parties in the case who are registered users of the CM/ECF system.

*/s/ Meegan B. Brooks*______________
MEEGAN B. BROOKS (WA 62516)

*Attorney for Defendant SHEEX, Inc.*



**Benesch Friedlander Coplan & Aronoff, LLP**
100 Pine Street, Suite 3100
San Francisco, CA 94111
TEL (628) 600-2250 FAX (628) 221-5858