

The Honorable David G. Estudillo

UNITED STATES DISTRICT COURT,
WESTERN DISTRICT OF WASHINGTON

ANDREW DEVIVO, on his own behalf and on behalf of others similarly situated,

Plaintiff,

vs.

SHEEX, INC.,

Defendant.

Case No. 3:25-cv-05807-DGE

**PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT**

OPPOSITION TO MOTION
TO DISMISS
No. 3:25-cv-05807-DGE

i

**Smith & Dietrich Law Offices PLLC**
1226 State Ave. N.E., Suite 205
Olympia, WA 98506
Tel.: (360) 915-6952

## TABLE OF CONTENTS

Standard of Decision ........................................................................................................ 2

Argument ........................................................................................................................ 2

I.  Plaintiff plausibly alleges receipt of false or misleading subject lines. ................................ 2

II. Plaintiff's CEMA claims are not preempted by the CAN-SPAM Act. ................................ 4

    A.  The Act does not require Plaintiff to plead and prove the elements of common law fraud or any other common law tort to avoid preemption. ....................................... 5

    B.  Sheex's deceptions are more than bare immaterial errors. ............................................11

III. Assuming it applies, Plaintiff's allegations satisfy the particularity requirement of Rule 9(b). ........................................................................................................................ 15

IV. Plaintiff's CPA claims survive. ........................................................................................ 16

V.  Plaintiff's claims for injunctive relief survive. .................................................................. 17

Conclusion ...................................................................................................................... 17

OPPOSITION TO MOTION
TO DISMISS
No. 3:25-cv-05807-DGE

ii

**Smith & Dietrich Law Offices PLLC**
1226 State Ave. N.E., Suite 205
Olympia, WA 98506
Tel.: (360) 915-6952

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Andrews v. Conversion Squared Corp.*,
    2020 WL 3978063 (C.D. Cal. May 8, 2020) ...........................................................................10

*Asis Internet Servs. v. Consumerbargaingiveaways, LLC*,
    622 F. Supp. 2d 935 (N.D. Cal. 2009) .................................................................................6, 7

*Asis Internet Servs. v. Member Source Media, LLC*,
    2010 WL 1610066 (N.D. Cal. Apr. 20, 2010) ..........................................................................8

*Asis Internet Servs. v. Subscriberbase Inc.*,
    2009 WL 4723338 (N.D. Cal. Dec. 4, 2009) ............................................................................7

*Asis Internet Servs. v. Vistaprint USA, Inc.*,
    617 F. Supp. 2d 989 (N.D. Cal. 2009) .....................................................................................7

*Avendano-Ramirez v. Ashcroft*,
    365 F.3d 813 (9th Cir. 2004) ...................................................................................................6

*Balsam v. Trancos, Inc.*,
    138 Cal. Rptr. 3d 108 (Cal. Ct. App. 2012) .............................................................................8

*Brown v. Old Navy, LLC*,
    567 P.3d 38 (Wash. 2025) ...........................................................................................1, 3, 14

*Brummet v. Washington's Lottery*,
    288 P.3d 48 (Wash. Ct. App. 2012) ........................................................................................14

*Cazarez-Guiterrez v. Ashcroft*,
    382 F3d 905 (9th Cir. 2004) ....................................................................................................6

*Fecht v. Price Co.*,
    70 F.3d 1078 (9th Cir. 1995) ..................................................................................................15

*Ferguson v. Quinstreet, Inc.*,
    2008 WL 3166307 (W.D. Wash. Aug. 5, 2008) .......................................................................7

*Gordon v. Virtumundo, Inc.*,
    575 F.3d 1040 (9th Cir. 2009) ...................................................................................... passim

OPPOSITION TO MOTION
TO DISMISS
No. 3:25-cv-05807-DGE

iii

**Smith & Dietrich Law Offices PLLC**
1226 State Ave. N.E., Suite 205
Olympia, WA 98506
Tel.: (360) 915-6952

*Harrington v. Vineyard Vines, LLC*,
    2025 WL 3677479 (W.D. Wash. Dec. 18, 2025) ...............................................................2, 3, 8

*Hoang v. Reunion.com, Inc.*,
    2010 WL 1340535 (N.D. Cal. Mar. 31, 2010).........................................................................8

*Hypertouch, Inc. v. ValueClick, Inc.*,
    123 Cal. Rptr. 3d 8 (Cal. Ct. App. 2011) ...............................................................................8

*Kleffman v. Vonage Holdings Corp.*,
    2007 WL 1518650 (C.D. Cal. May 23, 2007) ...................................................................7, 10

*Kousisis v. United States*,
    145 S. Ct. 1382 (2025)...................................................................................................12, 13

*Littlejohn v. Kaiser Fdn. Health Plan of Wash.*,
    2024 WL 4451955 (W.D. Wash. Oct. 9, 2024) ................................................................2, 15

*Ma v. Nike, Inc.*,
    2026 WL 100731 (W.D. Wash. Jan. 14, 2026)................................................................7, 16

*Omega World Travel, Inc. v. Mummagraphics, Inc.*,
    469 F.3d 348 (4th Cir. 2006) ......................................................................................... 9, 11

*Sams v. Yahoo! Inc.*,
    713 F.3d 1175 (9th Cir. 2013) ..........................................................................2, 11, 13, 15

*Silverstein v. Keynetics Inc.*,
    2016 WL 7475616 (N.D. Cal. Dec. 29, 2016), *aff'd*, 727 F. App'x 244 (9th
    Cir. Mar. 6, 2018) ................................................................................................................10

*Smith v. Anastasia Inc.*,
    2014 WL 12577598 (S.D. Cal. Sept. 15, 2014).....................................................................8

*Stephens v. Omni Ins. Co.*,
    159 P.3d 10 (Wash. Ct. App. 2007).....................................................................................14

*U.S. Commodity Futures Trading Comm'n v. Monex Cred. Co.*,
    931 F.3d 966 (9th Cir. 2018) ..............................................................................................13

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003) ......................................................................................15, 16

*Wagner v. Spire Vision*,
    2014 WL 889483 (N.D. Cal. Mar. 3, 2014)...........................................................................8

OPPOSITION TO MOTION
TO DISMISS
No. 3:25-cv-05807-DGE

iv

**Smith & Dietrich Law Offices PLLC**
1226 State Ave. N.E., Suite 205
Olympia, WA 98506
Tel.: (360) 915-6952

*Washington v. Heckel*,
    24 P.3d 404 (Wash. 2001)..................................................................................14

*Wright v. Lyft, Inc.*,
    406 P.3d 1149 (Wash. 2017)..............................................................................16

*Young v. Toyota Motor Sales, U.S.A.*,
    442 P.3d 5 (Wash. Ct. App. 2019).......................................................................2

**Statutes**

15 U.S.C. §§ 7701–7713 ................................................................................5, 6, 7

Wash. Rev. Code (RCW) § 19.190.030.........................................................................1

Wash. Rev. Code (RCW) § 19.190.020 ................................................................ *passim*

**Rules**

Fed. R. Civ. P. 9...............................................................................................15

Fed. R. Civ. P. 12...........................................................................................2, 13

**Other Authorities**

Huiliang Zhao *et al.*, *Impact of Pricing and Product Information on Consumer
    Buying Behavior with Customer Satisfaction in a Mediating Role*, 12 Frontiers
    in Psychology 720151 (2021) .........................................................................12

Restatement (Second) of Torts § 538 (Am. Law Inst. 1977)..........................................12

S. Rep. No. 108-102........................................................................................6, 7, 14

U.K. Competition & Mkts. Auth., *Online Choice Architecture—How Digital
    Design Can Harm Competition and Consumers* (2022).......................................11, 12

OPPOSITION TO MOTION
TO DISMISS                                     v
No. 3:25-cv-05807-DGE

**Smith & Dietrich Law Offices PLLC**
1226 State Ave. N.E., Suite 205
Olympia, WA 98506
Tel.: (360) 915-6952

Washington's Commercial Electronic Mail Act (CEMA) and Consumer Protection Act (CPA) prohibit commercial emails containing "false or misleading information in the subject line." Wash. Rev. Code § 19.190.020(1)(b); *see id.* § 19.190.030(1)(b) (CEMA violations are CPA violations). When faced with this clear prohibition, reinforced by a recent decision from the Washington Supreme Court, *see Brown v. Old Navy, LLC*, 567 P.3d 38 (Wash. 2025), Defendant Sheex, Inc., a home textiles retailer, simply decided to ignore it.

Sheex relentlessly spams consumers' inboxes with email subject lines larded with caps and emoji that herald the beginning, middle, and merciful end of promotions—*falsely*. "Final Hours for BIG Sitewide Savings" says Sheex—when the sale would last for almost another week. Compl. ¶ 39; *see* Price Decl. Ex. B at 2, ECF No. 21-2. "Final Hours to BIG Sitewide Savings!", says Sheex again—only to tell consumers the following day, "Surprise 😍 We've Extended These Savings!" Compl. ¶¶ 48–49. And so on. *See generally id.* ¶¶ 39–53; *id.* Ex. A.

Sheex seeks to divert attention away from its deceptive subject lines, and the false urgency they evoke, by evading their plain import. Nor can Sheex credibly assert that its deceptive subject headings are benign. These marketing tactics are referred to as false limited time messages, false time scarcity claims, or false urgency claims, *see id.* ¶¶ 29–37, and are one "common way online marketers manipulate consumer choice by inducing false beliefs." *Id.* ¶ 29 (internal quotation marks omitted). That is, marketers use them because they *work. See id.* ¶¶ 31–35. They cause consumers to pay less attention to and think less carefully about their purchasing decisions than they otherwise would, leaving them worse off. *See id.* As deployed by Sheex here, these tactics are straightforward violations of CEMA and thus the CPA. *See* Wash. Rev. Code § 19.190.030.

At its core, Sheex motion to dismiss presents one likewise straightforward question of statutory interpretation: Does a federal statute preempting state-law claims "except to the extent" that the state law relied on "prohibits falsity or deception" require Plaintiff to plead and prove the elements of common law fraud to avoid preemption? The obvious answer is no, as the leading

OPPOSITION TO MOTION
TO DISMISS
No. 3:25-cv-05807-DGE

1

**Smith & Dietrich Law Offices PLLC**
1226 State Ave. N.E., Suite 205
Olympia, WA 98506
Tel.: (360) 915-6952

decision in *Gordon v. Virtumundo, Inc.*, 575 F.3d 1040 (9th Cir. 2009), confirms. Sheex's remaining arguments fare no better. The Court should deny its motion.

## STANDARD OF DECISION

On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the complaint's well pleaded factual allegations are taken as true and all reasonable inferences are drawn in plaintiff's favor. *Littlejohn v. Kaiser Fdn. Health Plan of Wash.*, 2024 WL 4451955, at *3 (W.D. Wash. Oct. 9, 2024). The motion must be denied if the complaint states a claim to relief that is "plausible on its face." *Id.* Where, as here, defendant seeks Rule 12(b)(6) dismissal based on an affirmative defense, it must show that "the "allegations in the complaint suffice to establish the defense" and that the defense is "apparent from the face" of the complaint. *Sams v. Yahoo! Inc.*, 713 F.3d 1175, 1179 (9th Cir. 2013) (internal quotation marks omitted).

## ARGUMENT

### I.    Plaintiff plausibly alleges receipt of false or misleading subject lines.

CEMA prohibits "false or misleading" subject lines in commercial emails. Wash. Rev. Code § 19.190.020(1)(b). A statement may be literally true but nevertheless actionably misleading if it is "likely to mislead a reasonable consumer" *Young v. Toyota Motor Sales, U.S.A.*, 442 P.3d 5, 9 (Wash. Ct. App. 2019) (internal quotation marks omitted). Whether a representation is false or misleading is a question of fact unsuited for decision on a motion to dismiss. *See Harrington v. Vineyard Vines, LLC*, 2025 WL 3677479, at *1 & n.3 (W.D. Wash. Dec. 18, 2025) (denying motion to dismiss CEMA claims). Even taken on their own terms, however, Sheex's no-falsity arguments do not entitle it to dismissal. Sheex is trying to argue on the back end that its bait and switch email marketing tactics are not actually deceptive. Not only is that a position taken solely for its litigation position, but it defies common sense. Telling someone that a promotion is ending imminently when it is not is deceptive—plain and simple.

OPPOSITION TO MOTION
TO DISMISS
No. 3:25-cv-05807-DGE

2

**Smith & Dietrich Law Offices PLLC**
1226 State Ave. N.E., Suite 205
Olympia, WA 98506
Tel.: (360) 915-6952

**The May 29, 2023, email.** The subject line of the May 29, 2023, email is plausibly false or misleading. *See* Compl. ¶¶ 39–40, 66(a); Price Decl. Ex. A, ECF No. 21-1. The subject line reads, "Final Hours for BIG Sitewide Savings". The body of the email discloses that the "savings" referred to were offered as part of Sheex's "Memorial Day Sale." Most prominently, the promotion offered "25% Off Sitewide," along with other offers. But May 29 was *not* the "final hours" for "big sitewide savings," or for Sheex's Memorial Day promotion generally. The very next day, Sheex sent an email with the subject line "Memorial Day Sale EXTENDED! 25% Off Everything!" Compl. ¶¶ 40, 66(b); Price Decl. Ex. B, ECF No. 21-2. As the second email discloses, the 25 percent "sitewide" discount would run for almost a full *week* after Sheex told consumers it was ending in "hours." *See* Price Decl. Ex. B at 2 ("Offer valid now through 6/6/23 @ 3AM ET."). Sheex attempts to cure the deceptiveness of its May 29 subject line by pointing to other offers indicated in the body of the email, not in its subject line. *See* Mot. 4. But "the "truthfulness *of the subject line* does not depend on what the rest of the e-mail conveys." *Harrington*, 2025 WL 3677479, at *1 (quoting *Brown*, 567 P.3d at 47) (brackets omitted, emphasis added). While the body of the email may (like any other fact) explain or contextualize what makes a subject line deceptive, it cannot *cure* that deception, as Sheex urges. And CEMA focuses on subject lines.

In other words, "the "exact wording of the subject lines is critical." *Id.* at n.4 (brackets omitted). Sheex may now, belatedly, wish its subject line read "Final hours for an extra 15% stackable bonus, free gift of an insulated tote, 40 percent off a specified pillow, and free shipping," *see* Mot. 4—but that is not what it says. What it *says* is "Final Hours for BIG Sitewide Savings". And those "big sitewide savings," namely, the 25 percent sitewide discount and Sheex's "Memorial Day Sale" generally, continued, not for hours, but for nearly a week after Sheex sent its May 29 email saying it would end in hours. Whether that is false or misleading within the meaning of CEMA should be left for the trier of fact.

OPPOSITION TO MOTION
TO DISMISS
No. 3:25-cv-05807-DGE

3

**Smith & Dietrich Law Offices PLLC**
1226 State Ave. N.E., Suite 205
Olympia, WA 98506
Tel.: (360) 915-6952

**The November 22, 2023, email.** The subject line of the November 22, 2023, email is likewise plausibly false or misleading. *See* Compl. ¶¶ 43, 66(c); Price Decl. Ex. C, ECF No. 21-3. The subject line reads, "Early Access Black Friday Deals End Today!" The subject line falsely or misleadingly suggests that something of value to consumers would be "ending today"—but it was not. In fact, the actual Black Friday promotions, offered after the end of "early access," were at least as favorable, if not *more* favorable, to consumers than the "early access" deals. In other words, the November 22 email misleads consumers into thinking that they must act now or they'll miss out on something material to them. Whether that is false or misleading within the meaning of CEMA should be left for the trier of fact.

**The November 24, 2023, email.** The subject line of the November 24, 2023, email is likewise plausibly false or misleading. *See* Compl. ¶¶ 46, 66(d). The subject line reads, "Last Call for HUGE Black Friday Savings!" As November 24, 2023, was a Friday, Sheex's representation that this was the "last call" for Black Friday savings naturally and reasonably gives rise to the inference that the "huge savings" would be ending that day. But they did not; "it wasn't the 'last call.'" *Id.* ¶ 47. Indeed, the subject line of the email Sheex sent the very next day confirms this reading of the November 24 subject line: "*No, Really* – Last Chance to Shop Black Friday Savings!" *Id.* (emphasis added). "No, Really," communicates that Sheex's reading of the November 24 "last call" representation is the same as Plaintiff's (at least it was before Plaintiff filed this lawsuit): Sheex *said* on November 24 that November 24 would be the last day for Black Friday offers; but "really" that promotion was ending November 25. Whether that is false or misleading within the meaning of CEMA should be left for the trier of fact.

**II.    Plaintiff's CEMA claims are not preempted by the CAN-SPAM Act.**

Sheex argues that Plaintiff's CEMA claims are preempted by the federal CAN-SPAM Act, 15 U.S.C. §§ 7701–7713 ("Act"). Neither the Act's plain text, its legislative history, the Ninth

OPPOSITION TO MOTION
TO DISMISS
No. 3:25-cv-05807-DGE

4

**Smith & Dietrich Law Offices PLLC**
1226 State Ave. N.E., Suite 205
Olympia, WA 98506
Tel.: (360) 915-6952

Circuit's decision in *Gordon v. Virtumundo, Inc.*, 575 F.3d 1040 (9th Cir. 2009), nor cases decided before or after *Gordon* support preemption here.

**A.    The Act does not require Plaintiff to plead and prove the elements of common law fraud or any other common law tort to avoid preemption.**

The Act's preemption provision provides in relevant part as follows:

> This chapter supersedes any statute, regulation, or rule of a State or political subdivision of a State that expressly regulates the use of electronic mail to send commercial messages, *except to the extent that any such statute, regulation, or rule prohibits falsity or deception in any portion of a commercial electronic mail message or information attached thereto*.

15 U.S.C. § 7707(b)(1) (emphasis added).

The application of the Act's plain text to Plaintiff's claims is straightforward. CEMA prohibits sending commercial email that "[c]ontains false or misleading information in the subject line." Wash. Rev. Code § 19.190.020(1)(b). By prohibiting "false or misleading" subject lines in commercial emails, *id.*, CEMA "prohibits falsity or deception" in some part of or information attached to commercial emails. 15 U.S.C. § 7707(b)(1). By its plain terms, therefore, the Act does not preempt Plaintiff's CEMA claims. Notably, CAN-SPAM's exception is phrased in the disjunctive. It encompasses state laws prohibiting falsity *or* deception.

Dissatisfied with the statute Congress passed and the President signed, Sheex invites the Court to write a new one. It argues that when Congress used the words "falsity or deception," it *really* meant "common law fraud." *See* Mot. 6–15. But Congress is presumed to choose its words carefully and courts are bound to apply them. *See Avendano-Ramirez v. Ashcroft*, 365 F.3d 813, 818 (9th Cir. 2004) ("[W]e must presume that Congress said what it meant and meant what it said."). If Congress had intended to provide an exception to preemption only for common law

OPPOSITION TO MOTION
TO DISMISS
No. 3:25-cv-05807-DGE

5

**Smith & Dietrich Law Offices PLLC**
1226 State Ave. N.E., Suite 205
Olympia, WA 98506
Tel.: (360) 915-6952

fraud, it could have said so. It did not.

The context of the preemption provision reinforces its plain text. *See Cazarez-Guiterrez v. Ashcroft*, 382 F3d 905, 912 (9th Cir. 2004) ("[T]he words of a statute must be read in their context and with a view to their place in the overall statutory scheme"). In the immediately following paragraph, the Act further exempts from preemption claims based on "State … tort law" and state laws relating to "acts of fraud." 15 U.S.C. § 7707(b)(2). Thus, Congress in drafting the Act clearly understood how to refer to common law fraud when it wanted to. *See Asis Internet Servs. v. Consumerbargaingiveaways, LLC*, 622 F. Supp. 2d 935, 942 (N.D. Cal. 2009) ("Congress … is certainly familiar with the word 'fraud' and choose not to use it; the words 'falsity or deception' suggest broader application. In fact, … Congress utilized the word 'fraud' in the very next subsection."). Congress made a clear choice not to so limit the preemption exception in paragraph (b)(1), and that choice must be respected. *See id.* ("The text and structure of the provision indicate that … 'falsity or deception' is not limited *just* to common-law fraud and other similar torts.").

Legislative history points to the same conclusion. The Report of the Senate Committee on Commerce, Science, and Transportation described the effect of the Act's preemption provision as follows: "[A] State law requiring some or all commercial e-mail to carry specific types of labels, or to follow a certain format or contain specified content, would be preempted. By contrast, a State law prohibiting fraudulent or deceptive headers, subject lines, or content in commercial e-mail would not be preempted." S. Rep. No. 108-102, at 21. The Senate Report makes clear that Congress did not intend § 7707(b)(1) preemption to reach everything short of common law fraud, and indeed expressly endorses the very claims brought here: claims based on "a State law prohibiting … deceptive … subject lines … in commercial email." *Id.*

Court after court, both federal and state, both before and after the Ninth Circuit's decision in *Gordon*, has concluded likewise: statutory and common law claims that attack "falsity and

OPPOSITION TO MOTION
TO DISMISS
No. 3:25-cv-05807-DGE

6

**Smith & Dietrich Law Offices PLLC**
1226 State Ave. N.E., Suite 205
Olympia, WA 98506
Tel.: (360) 915-6952

deception" broadly in commercial email are not preempted; pleading and proving the elements of common law fraud or any other tort is not required. 15 U.S.C. § 7707(b)(1). Even before *Gordon* permanently foreclosed Sheex's contrary argument, courts correctly perceived its lack of merit. *See Asis Internet Servs. v. Subscriberbase Inc.*, 2009 WL 4723338, at *3 (N.D. Cal. Dec. 4, 2009) (not discussing *Gordon* though decided subsequently) ("Plaintiffs … do not need to plead reliance and damages in order to avoid preemption of their claims."); *Asis Internet Servs. v. Vistaprint USA, Inc.*, 617 F. Supp. 2d 989, 993 (N.D. Cal. 2009) ("[T]he Court declines to restrict the term 'falsity or deception' to encompass only common-law fraud claims."); *Consumerbargaingiveaways*, 622 F. Supp. 2d at 942, 944 ("'[F]alsity or deception' is not limited *just* to common-law fraud and other similar torts. … Plaintiffs' claims are not preempted merely because the complaint fails to plead, or [the applicable state statute] fails to require, reliance and/or damages."); *Ferguson v. Quinstreet, Inc.*, 2008 WL 3166307, at *9 (W.D. Wash. Aug. 5, 2008) ("[W]hile claims actually alleging falsity or deception under CEMA would not be preempted, … claims … for at best incomplete or less than comprehensive information … are for immaterial errors that may not be litigated under state law."). Not even Sheex's sole Ninth Circuit district court authority, decided before *Gordon*, reached a different result. *See Kleffman v. Vonage Holdings Corp.*, 2007 WL 1518650, at *2–3 (C.D. Cal. May 23, 2007) (quoting S. Rep. No. 108-102, at 21) ("The failure to send mail from a single domain name that includes the word 'Vonage' is simply not a misrepresentation in any ordinary sense of the word. … [T]he claim that the failure to include Vonage's name in the email is clearly preempted, as it would amount to a 'State law requiring some or all commercial e-mail to ... contain specified content.'"), *cited by* Mot. 8–9.

After *Gordon*, this picture is even clearer. *See, e.g.*, *Ma v. Nike, Inc.*, 2026 WL 100731, at *3 (W.D. Wash. Jan. 14, 2026) ("[B]y their plain terms, 'falsity' and 'deception' do not equate to common law fraud"); *Harrington*, 2025 WL 3677479, at *1 ("Because CEMA's subject-line provision forbids only false or misleading information (*i.e.*, 'falsity or deception'), it is not

OPPOSITION TO MOTION
TO DISMISS
No. 3:25-cv-05807-DGE

7

**Smith & Dietrich Law Offices PLLC**
1226 State Ave. N.E., Suite 205
Olympia, WA 98506
Tel.: (360) 915-6952

preempted by CAN-SPAM."); *Smith v. Anastasia Inc.*, 2014 WL 12577598, at \*2–3 (S.D. Cal. Sept. 15, 2014) (agreeing that "a showing of reliance and damages is not necessary" to avoid preemption); *Wagner v. Spire Vision*, 2014 WL 889483, at \*3–4 (N.D. Cal. Mar. 3, 2014) ("The great weight of district court and state court decisions have agreed that a showing of reliance and damages is not necessary."); *Asis Internet Servs. v. Member Source Media, LLC*, 2010 WL 1610066, at \*3 (N.D. Cal. Apr. 20, 2010) ("[T]he Court concludes reliance and damages need not be demonstrated to save a lawsuit from preemption."); *Balsam v. Trancos, Inc.*, 138 Cal. Rptr. 3d 108, 122 (Cal. Ct. App. 2012) ("adopt[ing]" reasoning that "Congress must have intended the phrase 'falsity or deception' to encompass fraudulent or deceptive conduct that would not satisfy all elements of common law fraud."); *Hypertouch, Inc. v. ValueClick, Inc.*, 123 Cal. Rptr. 3d 8, 27 (Cal. Ct. App. 2011) ("[D]efendants may be subject to suit for deceptive subject lines … without regard to their knowledge or mental state, and regardless of whether anyone was actually deceived."). Indeed, one district court *reversed* its prior decision in light of *Gordon*. *See Hoang v. Reunion.com, Inc.*, 2010 WL 1340535, at \*4 (N.D. Cal. Mar. 31, 2010) (vacating prior pre-*Gordon* decision to the contrary) (Plaintiff was "not required" to "additionally allege he relied to his detriment" on false or misleading statement to avoid preemption.).

Careful attention to *Gordon*'s actual reasoning and holding, rather than loose citation to its dicta, reveals why. The question in *Gordon* was "[w]hether the exception language of § 7707(b) permits states to prohibit e-mail activity that is *not* unfair or deceptive." 575 F.3d at 1062 n.21. Unsurprisingly, the court's answer was no. As relevant here, *Gordon* involved CEMA's "point of origin" provision, which prohibits "misrepresent[ing] or obscur[ing] any information in identifying the point of origin or the transmission path" of commercial email. Wash. Rev. Code § 19.190.020(1)(a); *see Gordon*, 575 F.3d at 1058. The defendant allegedly violated this prohibition by sending emails with "from" fields that did not "clearly identify" defendant as the sender. *Id.* at 1063. The "from" fields included "CriminalJustice [at] vm-mail.com,"

OPPOSITION TO MOTION
TO DISMISS
No. 3:25-cv-05807-DGE

8

**Smith & Dietrich Law Offices PLLC**
1226 State Ave. N.E., Suite 205
Olympia, WA 98506
Tel.: (360) 915-6952

"PublicSafetyDegrees [at] vmadmin.com," and "TradeIn [at] vm-mail.com." *Id.*

As construed by the court, CEMA's point-of-origin provision reaches "a vast array of nondeceptive acts and practices," including "unintentional clerical errors, imperfect representations, or immaterial misstatements." *Id.* at 1059 (internal quotation marks, citation omitted). The CAN-SPAM Act, by contrast, as interpreted in light of its text, structure, and purpose, *see id.* at 1061, does not authorize liability for "bare immaterial error," *id.* (quoting *Omega World Travel, Inc. v. Mummagraphics, Inc.*, 469 F.3d 348, 359 (4th Cir. 2006)), or "immaterial inaccuracies or omissions." *Id.* at 1062. Rather, the Act restricts state regulation to the field of "traditionally tortious or wrongful conduct." *Id.* (quoting *Omega*, 469 F.3d at 354).

Under this standard, Gordon's claims were preempted. The Ninth Circuit found "nothing inherently deceptive" about the use of "fanciful" domain names. *Id.* The domains from which defendant's emails were sent were "properly registered" to it and permitted anyone to "accurately identif[y]" defendant as the registrant. *Id.* at 1064. The fields had not been "altered to impair a recipient's ability to identify, locate, or respond" to the sender and were not "aimed at misleading recipients" as to the sender's identity. *Id.* The plaintiff's arguments against preemption boiled down to a requirement that defendant's or a client's full name "expressly appear" in "from" fields. *Id.* If CEMA imposed such a "labeling requirement," the Ninth Circuit explained, it "clearly" fell outside the federal statute's exception from preemption. *Id.* In short, the plaintiff's CEMA claims sought relief for "non-deceptive statements or omissions" or for violations of a "heightened content or labeling requirement." *Id.*; *see also id.* (Plaintiff's "technical allegations" about "from" fields "find no basis in traditional tort theories."). Those claims were not within the federal statute's exception and were, therefore, preempted. *Id.*

Decisions applying *Gordon* have correctly refused to overread it. Rather, district courts apply *Gordon* according to its terms: where plaintiffs plead only "nondeceptive statements or omissions," then their claims are preempted. *See, e.g.*, *Andrews v. Conversion Squared Corp.*, 2020

OPPOSITION TO MOTION
TO DISMISS
No. 3:25-cv-05807-DGE

9

**Smith & Dietrich Law Offices PLLC**
1226 State Ave. N.E., Suite 205
Olympia, WA 98506
Tel.: (360) 915-6952

WL 3978063, at *2–3 (C.D. Cal. May 8, 2020) ("Plaintiffs do not really allege deception, period, instead taking issue with a variety of missing information" in "from" fields.). *Accord Kleffman*, 2007 WL 1518650, at *2 ("The failure to send mail from a single domain name that includes the word 'Vonage' is simply not a misrepresentation in any ordinary sense of the word."), *cited by* Mot. 8–9. Put differently, plaintiffs seeking to avoid preemption need only show some degree of materiality. *See Silverstein v. Keynetics Inc.*, 2016 WL 7475616, at *3–4 (N.D. Cal. Dec. 29, 2016) ("Although Plaintiff alleges that the email headers include false 'from' names," that is, fictitious names like "Liana Christian," "those names are not materially deceptive."), *aff'd*, 727 F. App'x 244, 246 (9th Cir. Mar. 6, 2018) ("The e-mails' use of the LinkedIn.com domain name is not materially false or misleading within the meaning of the CAN-SPAM Act."). This case is not about missing information. It is about deception: saying one thing when another is true.

*Gordon* and the cases applying it thus simultaneously explain the import of "traditionally tortious or wrongful conduct," *Gordon*, at 575 F.3d at 1062, in the preemption analysis, and give the lie to Sheex's characterization of Plaintiff's CEMA claims as attempts to impose "strict liability." Mot. 9. To merit preemption, a defendant under *Gordon* has to show it didn't do anything *wrong*, in light of the state-law standard to be applied to its conduct, viewed against the backdrop of what has traditionally been considered wrongful. Sheex has not and cannot make that showing here. Sheex does precisely what CEMA prohibits: it spams Washington residents with commercial emails containing "false or misleading information in the subject line." Wash. Rev. Code § 19.190.020(1)(b). As shown below, Sheex does this by misrepresenting what is perhaps the single most important fact to consumers—*price*—in a way exploits well documented features of consumer psychology and distorts markets' proper functioning. Sheex does not even attempt to argue that such conduct has been traditionally understood as beyond the reach of prohibitions on falsity and deception in commerce. Sheex may regret the significant statutory damages imposed by CEMA for its conduct, but that does not make CEMA a strict liability statute, or its own

OPPOSITION TO MOTION
TO DISMISS
No. 3:25-cv-05807-DGE

10

**Smith & Dietrich Law Offices PLLC**
1226 State Ave. N.E., Suite 205
Olympia, WA 98506
Tel.: (360) 915-6952

deceptions mere immaterial errors.

**B.      Sheex's deceptions are more than bare immaterial errors.**

The only question, therefore, is whether it is "apparent from the face" of Plaintiff's Complaint, *Sams*, 713 F.3d at 1179, that the misrepresentations they complain of are merely "bare immaterial error[s]." *Gordon*, 575 F.3d at 1061 (quoting *Omega World*, 469 F.3d at 359). It is not. Plaintiff is not complaining of "fanciful" domain names or "from" fields that fail an invented "labeling requirement." *Id.* at 1063–64. To the contrary, Plaintiff complains of Sheex's barrage of emails laden with false or misleading subject lines, *i.e.*, its false time-scarcity tactics. Those tactics are plainly material to the behavior of ordinary consumers. If they were not, Sheex wouldn't deploy them in the first place. In short, those tactics work and garner more sales.

As alleged, "[f]alse time scarcity claims … harm consumers by manipulatively distorting their decision-making to their detriment." Compl. ¶ 34 (emphasis omitted). As one report cited in the Complaint concludes, "[f]alse or misleading scarcity claims can change the behaviour of consumers." U.K. Competition & Mkts. Auth., *Online Choice Architecture—How Digital Design Can Harm Competition and Consumers* 27 (2022), https://perma.cc/V848-7TVV/ (cited at Compl. ¶¶ 33, 35–37, 39–40). Specifically, "[f]alse scarcity claims are psychologically effective" because, "[a]s 'considerable evidence' suggests, 'consumers react to scarcity and divert their attention to information where they might miss opportunities.'" Compl. ¶ 31 (quoting *Online Choice Architecture*, *supra*, at 26). One study found that "customers who took timed deals rather than waiting to see wider options ended up worse off than those who waited." *Id.* ¶ 35 (quoting *Online Choice Architecture*, *supra*, at 27). Moreover, consumers learn to alter their behavior in the face of false scarcity claims, "meaning that when a product [or offer] is truly scarce, the seller will not be able to credibly communicate this information." *Id.* ¶ 36 (quoting *Online Choice Architecture*, *supra*, at 27). And at this stage, the Court must accept facts pleaded in the Complaint as true.

All of this accords with the federal law of materiality, not to mention common sense.

OPPOSITION TO MOTION
TO DISMISS
No. 3:25-cv-05807-DGE

11

**Smith & Dietrich Law Offices PLLC**
1226 State Ave. N.E., Suite 205
Olympia, WA 98506
Tel.: (360) 915-6952

"Whether in tort or contract law," materiality focuses on "the effect on the likely or actual behavior of the recipient of the alleged misrepresentation." *Kousisis v. United States*, 145 S. Ct. 1382, 1396 (2025) (applying wire fraud statute). A fact is material "if a reasonable person would attach importance to it in deciding how to proceed, or if the defendant knew (or should have known) that the recipient would likely deem it important." *Id.* (citing *inter alia* Restatement (Second) of Torts § 538 (Am. Law Inst. 1977)). Representations about the timing and availability of sales, discounts, and other special offers are, at bottom, representations about prices. If a 50 percent discount on a $20 product "ends tonight," that product costs $10 today and $20 tomorrow. And price is obviously a material fact—perhaps *the* material fact—affecting the behavior of ordinary consumers. *See, e.g.*, Huiliang Zhao *et al.*, *Impact of Pricing and Product Information on Consumer Buying Behavior with Customer Satisfaction in a Mediating Role*, 12 Frontiers in Psychology 720151 (2021), *available at* https://pmc.ncbi.nlm.nih.gov/articles/PMC8710754/pdf/fpsyg-12-720151.pdf/. If a consumer is in the market for a product she believes will cost $20 tomorrow, she will naturally "attach importance," *Kousisis*, 145 S. Ct. at 1396, to the fact that it will cost only $10 if she buys it today.

As for common sense, Sheex's argument flies in its face. Sheex is a "sophisticated commercial enterprise" that has "engaged in persistent marketing through mass email campaigns across the United States." Compl. ¶ 55. Its email marketing platform enables it to, among other things, track how many recipients engage with its marketing materials and to what extent. *See id.* ¶ 59. And email subject lines offer limited space within which Sheex can communicate "above the fold" messages that come to consumer attention even if the emails are immediately deleted or their contents ignored. Why, then, would Sheex choke its consumers' inboxes like coffee grounds in a sink with email after email announcing that an offer is in its "Final Hours" or that it's "LAST CALL" for an offer, Compl. ¶¶ 39, 42, 46, 48, 50—why would Sheex expend all this time and effort broadcasting mere immaterialities? A plausible answer (indeed, the only plausible answer)

OPPOSITION TO MOTION
TO DISMISS
No. 3:25-cv-05807-DGE

12

is, of course it would not. Sheex would not waste valuable marketing dollars or consumer attention on marketing messages unless they *worked*. And Sheex's false-urgency tactics work because they exploit well documented features of consumer psychology and behavior. *See id.* ¶¶ 29–35. In other words, Sheex's tactics work because they misrepresent facts to which consumers "attach importance." *Kousisis*, 145 S. Ct. at 1396. Nothing in the text of the CAN-SPAM Act or *Gordon* requires more to avoid preemption.

Sheex launches scattershot objections to this inescapable conclusion, but none finds its mark. First, Sheex argues Plaintiff cannot show materiality because he does not allege he read or relied on its misleading subject lines. *See* Mot. 13. That gets the pleading burdens backwards. It is not Plaintiff's burden to anticipate, refute, or "plead around" Sheex's affirmative defense. *U.S. Commodity Futures Trading Comm'n v. Monex Cred. Co.*, 931 F.3d 966, 972 (9th Cir. 2018). Having elected to raise its CAN-SPAM defense under Rule 12(b)(6), it is *Sheex's* burden to show that it is "apparent from the face" of Plaintiff's Complaint that Sheex is entitled to dismissal. *Sams*, 713 F.3d at 1179. In any event, Sheex's argument confounds materiality and reliance. In assessing the former, the question is not whether any particular Plaintiff changed their behavior in response to any particular email, but whether Sheex's misrepresentations would have an "effect on the *likely … behavior*" of its recipients. *Kousisis*, 145 S. Ct. at 1396 (emphasis added); *see also id.* ("[A] misrepresentation is material if a reasonable person *would attach* importance to it in deciding how to proceed, or if the defendant knew (or should have known) that the recipient *would likely* deem it important." (emphasis added)). And, as shown above, reasonable consumers attach importance to the price of consumer goods.

Next, for the sweeping proposition that statements creating false urgency "are not material," Mot. 12, Sheex cites one decision from the Washington Court of Appeals holding, without analysis, that representations about raffle tickets "going fast" did not misrepresent "something of material importance." *Brummet v. Washington's Lottery*, 288 P.3d 48, 55 (Wash.

OPPOSITION TO MOTION TO DISMISS
No. 3:25-cv-05807-DGE

13

Ct. App. 2012). But *Brummet* is readily distinguishable. To represent nonspecifically that certain widgets are "going fast" does not in itself say anything about how many widgets remain, or for how long consumers can expect those widgets to remain available for sale. If, by contrast, the *Brummet* defendant had used Sheex's tactics and represented that the raffle was in its "Final Hours," Compl. ¶ 39, when it was not, that would be representing urgency "when in fact there is no urgency," making it actionably deceptive. *Stephens v. Omni Ins. Co.*, 159 P.3d 10, 19 (Wash. Ct. App. 2007) ("The increasingly urgent tone ('ATTENTION!') and message ('ACTIVITY PENDING TEN (10) days') [of defendant's dunning letters] suggests that the recipient's situation is becoming worse with each passing day when in fact there is no urgency."); *see also Brown*, 567 P.3d at 47 ("Washington residents would depend on" certain factual representations "in making their consumer decisions," including representations about "the duration or availability of a promotion.").

Finally, Sheex suggests that email subject lines can never be material as a matter of law. *See* Mot. 12. Congress disagrees. *See* S. Rep. No. 108-102, at 21 (noting claims for "fraudulent or deceptive … subject lines" would not be preempted by the CAN-SPAM Act). So too does the state of Washington. *See Brown*, 567 P.3d at 47 ("CEMA requires truthfulness in e-mail subject lines, and … such truthfulness does not depend on what the rest of the e-mail conveys," including truthfulness about "representations of fact … Washington residents would depend on in making their consumer decisions."); *Washington v. Heckel*, 24 P.3d 404, 410 (Wash. 2001) ("When spammers use subject lines such as 'Hi There!,' 'Information Request,' and 'Your Business Records,' it becomes virtually impossible to distinguish spam from legitimate personal or business messages." (internal quotation marks omitted)). So too should this Court.

In any event, materiality is a mixed question of law and fact "typically … resolved by juries." *Fecht v. Price Co.*, 70 F.3d 1078, 1081 (9th Cir. 1995). Any doubts as to the materiality of Sheex's misrepresentations are therefore to be doubly resolved against Sheex: once because it

OPPOSITION TO MOTION
TO DISMISS
No. 3:25-cv-05807-DGE

14

**Smith & Dietrich Law Offices PLLC**
1226 State Ave. N.E., Suite 205
Olympia, WA 98506
Tel.: (360) 915-6952

is not Plaintiff's burden to plead materiality, but Sheex's burden to show Plaintiff has pleaded himself out of court with immaterialities, *see Sams*, 713 F.3d at 1179; and twice because Plaintiff should be afforded the benefit of fact and expert discovery to demonstrate the plausible inference that Sheex sends its misleading email subject lines precisely to impact consumer behavior. Indeed, at this stage, the Court must draw reasonable inferences in Plaintiff's favor. *See Littlejohn*, 2024 WL 4451955, at *3. Sheex is not entitled to dismissal on the basis of CAN-SPAM Act preemption.

**III.    Assuming it applies, Plaintiff's allegations satisfy the particularity requirement of Rule 9(b).**

The particularity provision of Rule 9(b) requires plaintiffs to plead "the who, what, when, where, and how of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotation marks omitted). Rule 9(b) does not apply to Plaintiff's claims at all. The requirement applies when "alleging fraud" to "the circumstances constituting fraud." Fed. R. Civ. P. 9(b). But, as explained above, *see* part II.A, Plaintiff need not and does not allege fraud or its circumstances. Rule 9(b) is a pleading rule that requires a pleader to make specific allegations when fraud is on the table so that a defendant can adequately figure out what is being alleged. The facts of this case are fairly simple: a commercial enterprise sent deceptive emails to consumers. This is not a complex healthcare fraud case with a complicated billing scheme that is difficult to understand. So Rule 9(b) finds no application here, but even if it applied, this pleading satisfies it because it is specific about how these emails work:

*Who*: Defendant Sheex, Inc. *See, e.g.*, Compl. ¶ 3.

*What*: Created false senses of urgency and time pressure to induce Plaintiff and others to buy its products immediately. *See id.* ¶¶ 4–6, 29–54, 65–68.

*When*: On May 29, 2023, November 22, 2023, and November 24, 2023, at least. *See id.* ¶ 66.

*Where*: At Plaintiff's personal email account. *See id.*

OPPOSITION TO MOTION
TO DISMISS
No. 3:25-cv-05807-DGE

15

**Smith & Dietrich Law Offices PLLC**
1226 State Ave. N.E., Suite 205
Olympia, WA 98506
Tel.: (360) 915-6952

*How*: By email subject lines containing identified false statements of fact as to the duration and availability of a promotion. *See id.* ¶¶ 39–53, 66.

Sheex argues that Plaintiff has not pleaded specific theories of how its subject lines are false or misleading. *See* Mot. 15–16. Again, even assuming the particularity requirement applied and required such fine-grained mapping of law to fact beyond the "who, what, when, where, and how" identified above, the Complaint explains Plaintiff's theory of deception in detail. *See* Compl. ¶¶ 37–53. As to each set of challenged emails, the pattern of deception is the same: Sheex barrages consumers with subject lines urgently asserting that the end of some particular sale or promotion is nigh. In some cases, those assertions are just false. *See, e.g.*, *id.* ¶ 39. In others, they are profoundly misleading. *See, e.g.*, *id.* ¶ 46. The same story is told in detail again and again in the relevant paragraphs of the Complaint. *See id.* ¶¶ 39–53.

In any event, Sheex nowhere argues that, stripped of any suggestion of intentional deception, *see Vess*, 317 F.3d at 1105, Plaintiff's allegations fail to state a claim under CEMA or the CPA, which do not require intent. *See Wright v. Lyft, Inc.*, 406 P.3d 1149, 1153–55 (Wash. 2017) (delineating elements of CPA and CEMA claims, none requiring intent). In short, Rule 9(b)'s particularity requirement doesn't apply to Plaintiff's claims. If it does, it is satisfied. If it isn't satisfied, Plaintiff's claims survive anyway. Rule 9(b) affords Sheex no relief. *Cf. Ma*, 2026 WL 100731, at *4 ("Here, even if Rule 9(b) applies, Mr. Ma meets the heightened pleading standard by pleading the who, what, where, why, and how of his claim, along with setting forth what was false or misleading about the subject lines in Nike's emails.").

**IV.     Plaintiff's CPA claims survive.**

Sheex's only argument for dismissal of Plaintiff's CPA claims is that they stand or fall with Plaintiff's CEMA claims. *See* Mot. 16. As Plaintiff's CEMA claims survive for the reasons given above, so too do his CPA claims.

OPPOSITION TO MOTION
TO DISMISS
No. 3:25-cv-05807-DGE

16

**Smith & Dietrich Law Offices PLLC**
1226 State Ave. N.E., Suite 205
Olympia, WA 98506
Tel.: (360) 915-6952

**V.      Plaintiff's claims for injunctive relief survive.**

In opposition to injunctive relief, Sheex offers a single assertion of fact not found in the Complaint and not supported by any citation: that Plaintiff has "unsubscribed from SHEEX's email marketing list." Mot. 17. The Court should disregard this unsupported, unsourced, and unpleaded assertion in favor of the plausible inference from Plaintiff's actual allegations: he will continue to receive Sheex's emails because Sheex will keep sending them. The truth or falsity of Sheex's contrary narrative must await discovery.

<strong>CONCLUSION</strong>

The Court should deny Sheex's motion to dismiss.

DATE: January 16, 2026

I certify that this memorandum contains 5,783 words, in compliance with the Local Civil Rules.

Respectfully submitted,

/s/ Walter Smith

Walter M. Smith, WSBA # 46695
**Smith & Dietrich Law Offices, PLLC**
1226 State Avenue N.E., Suite 205
Olympia, WA 98501
Tel.: (360) 915-6952
walter@smithdietrich.com

Lynn A. Toops*
**CohenMalad, LLP**
One Indiana Square, Suite 1400
Indianapolis, IN 46204
Tel.: (317) 636-6481
ltoops@cohenmalad.com

OPPOSITION TO MOTION
TO DISMISS
No. 3:25-cv-05807-DGE

17

J. Gerard Stranch, IV*
Michael C. Tackeff*
**Stranch, Jennings & Garvey, PLLC**
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
Tel.: (615) 254-8801
mtackeff@stranchlaw.com

*Attorneys for Plaintiff*
* Admitted *pro hac vice*

OPPOSITION TO MOTION
TO DISMISS
No. 3:25-cv-05807-DGE

18

**Smith & Dietrich Law Offices PLLC**
1226 State Ave. N.E., Suite 205
Olympia, WA 98506
Tel.: (360) 915-6952