**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT TACOMA**

| | |
|---|---|
| ANDREW DEVIVO, on his own behalf and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SHEEX, INC.,<br><br>Defendant. | Case No. 3:25-cv-05807-DGE<br><br>**DEFENDANT SHEEX, INC'S RESPONSE TO ORDER TO SHOW CAUSE (DKT. NO. 28)**<br><br>NOTE ON MOTION CALENDAR:<br>April 2, 2026<br><br>ORAL ARGUMENT REQUESTED |

DEFENDANT SHEEX, INC'S RESPONSE TO ORDER TO
SHOW CAUSE (DKT. NO. 28)- 1

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ..................................................................................................1

II.     BACKGROUND ...................................................................................................1

III.    LEGAL STANDARD.............................................................................................2

      A.      Article III Standing ...................................................................................2

      B.      Intangible Statutory Violations, Including Alleged CEMA Violations, Can Constitute an Injury-In-Fact That Establishes Article III Standing. ............2

IV.     ARGUMENT.........................................................................................................4

      A.      Plaintiff's Alleged Receipt of Misleading Spam Email Constitutes a Cognizable Injury Under Article III. ...........................................................4

            1.      CEMA's Legislative History Makes Clear That the Statute Was Enacted to Codify Substantive Rights and Protect Against Injuries-in-Fact. ..................................................................................................4

            2.      Courts in This District Have Explicitly Held, and the Ninth Circuit Has Implicitly Held, that a CEMA Violation States Sufficient Injury for Article III Standing.............................................................4

            3.      Plaintiff Alleges an Injury-in-Fact....................................................6

            4.      Preemption and Article III are Different Standards........................8

      B.      CAFA Removal Is Supported by the Complaint Allegations and CEMA's Statutory Language. ...................................................................................9

            1.      The Court Must Afford Deference to Plaintiff's Statements About the Damages He Seeks When Deciding Whether the Jurisdictional Amount in Controversy Is Met. ........................................................9

            2.      SHEEX Establishes, by a Preponderance of the Evidence, that Removal Was Proper Under CAFA...............................................11

V.      CONCLUSION...................................................................................................13

DEFENDANT SHEEX, INC'S RESPONSE TO ORDER TO
SHOW CAUSE (DKT. NO. 28)- i

BALLARD SPAHR LLP
1301 2ND AVE, SUITE 2800
SEATTLE WA 98101-2930
PHONE: 206.223.7000 FAX: 206.223.7107

**TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*Booth v. Appstack, Inc.*,
2016 WL 3030256 (W.D. Wash. May 25, 2016)..........................................................................6

*Brinton v. Vivint Inc.*,
2024 WL 3688589 (W.D. Wash. Aug. 7, 2024) ...........................................................................7

*Cantrell v. City of Long Beach*,
241 F.3d 674 (9th Cir. 2001) ......................................................................................................3

*Chin v. Evergreen Freedom Found.*,
764 F. Supp. 3d 924 (C.D. Cal. 2025) .........................................................................................7

*Cohn v. Petsmart, Inc.*,
281 F.3d 839 (9th Cir. 2002) ......................................................................................................9

*Coleman-Anacleto v. Samsung Elecs. Am., Inc.*,
2016 WL 4729302 (N.D. Cal. Sept. 12, 2016) ...........................................................................2

*Cruz v. Wal-Mart Stores, Inc.*,
2017 WL 3394308 (D. Nev. Aug. 4, 2017) .................................................................................9

*Dart Cherokee Basin Operating Co., LLC v. Owens*,
574 U.S. 81 (2014)......................................................................................................................9

*Eichenberger v. ESPN, Inc.*,
876 F.3d 979 (9th Cir. 2017) ..................................................................................................3, 4

*In re Equifax Inc. Customer Data Sec. Breach Litig.*,
999 F.3d 1247 (11th Cir. 2021) ..................................................................................................5

*Flores v. Safeway, Inc.*,
2019 WL 4849488 (W.D. Wash. Oct. 1, 2019) ...........................................................................9

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*,
528 U.S. 167 (2000)....................................................................................................................2

*Geographic Expeditions, Inc. v. Est. of Lhotka ex rel. Lhotka*,
599 F.3d 1102 (9th Cir. 2010) ....................................................................................................9

*Gordon v. Virtumundo*,
575 F.3d 1040 (9th Cir. 2009) .....................................................................................5, 8, 11, 12

DEFENDANT SHEEX, INC'S RESPONSE TO ORDER TO
SHOW CAUSE (DKT. NO. 28)- ii

BALLARD SPAHR LLP
1301 2ND AVE, SUITE 2800
SEATTLE WA 98101-2930
PHONE: 206.223.7000 FAX: 206.223.7107

*Greenley v. Kochava, Inc.*,
  684 F. Supp. 3d 1024 (S.D. Cal. 2023)......................................................................8

*Harbers v. Eddie Bauer, LLC*,
  415 F. Supp. 3d 999 (W.D. Wash. 2019)............................................................. *passim*

*Havens Realty Corp. v. Coleman*,
  455 U.S. 363 (1982)......................................................................................4

*Hoffman v. One Techs., LLC*,
  2017 WL 176222 (W.D. Wash. Jan. 17, 2017)............................................................7

*Jefferson v. Walmart Inc.*,
  2025 WL 1616799 (C.D. Cal. June 5, 2025) ...........................................................9

*Jones v. Ford Motor Company*,
  85 F.4th at 570 (9th Cir. 2023) .......................................................................8

*Kinzie Advanced Polymers LLC v. Highopes LLC*,
  2024 WL 4803515 (W.D. Wash. Nov. 15, 2024)........................................................9

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992)......................................................................................2

*Lynch v. AML Network Ltd.*,
  2021 WL 4453470 (C.D. Cal. Sep. 27, 2021)..........................................................7

*Magadia v. Wal-Mart Assocs., Inc.*,
  999 F.3d 668 (9th Cir. 2021) ..........................................................................4

*Patel v. Facebook, Inc.*,
  932 F.3d 1264 (9th Cir. 2019) .........................................................................4

*Reichman v. Poshmark, Inc.*,
  267 F. Supp. 3d 1278 (S.D. Cal. 2017)................................................................6

*Robins v. Spokeo, Inc.*,
  867 F.3d 1108 (9th Cir. 2017), *cert. denied*, 138 S. Ct. 931 (2018)....................................3, 5

*Silverstein v. Keynetics, Inc.*,
  2018 WL 5795776 (C.D. Cal. Nov. 5, 2018)..........................................................5, 6, 7

*Silverstein v. Keynetics, Inc.*,
  727 F. App'x 244 (9th Cir. 2018) ......................................................................5

*Singer v. State Farm Mut. Auto. Ins. Co.*,
  116 F.3d 373 (9th Cir. 1997) ..........................................................................12

DEFENDANT SHEEX, INC'S RESPONSE TO ORDER TO
SHOW CAUSE (DKT. NO. 28)- iii

BALLARD SPAHR LLP
1301 2ND AVE, SUITE 2800
SEATTLE WA 98101-2930
PHONE: 206.223.7000 FAX: 206.223.7107

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016)................................................................................2, 3, 4, 7

*Stand. Fire Ins. Co. v. Knowles*,
  568 U.S. 588 (2013)................................................................................10

*TransUnion LLC v. Ramirez*,
  594 U.S. 413 (2021).................................................................................4, 7

*Van Patten v. Vertical Fitness Grp., LLC*,
  847 F.3d 1037 (9th Cir. 2017) ................................................................3, 5

*Vargas v. Facebook, Inc.*,
  2023 WL 6784359 (9th Cir. Oct. 13 , 2023)............................................4

*Warth v. Seldin*,
  422 U.S. 490 (1975)..................................................................................2, 3

*Whittaker v. Tactical USA LLC*,
  2024 WL 1855645 (E.D. Cal. Apr. 29, 2024)...........................................7

**State Cases**

*Aaland v. CRST Home Sols., LLC*,
  575 P.3d 1279 (Wash. Ct. App. 2025)......................................................7

*Cert. from U.S. Dist. Ct. for W. Dist. of Wash. in Brown v. Old Navy*,
  4 Wn. 3d 580, 583, 567 P.3d 38 41 (Wash. 2025)....................................4, 10

*State v. Heckel*,
  24 P.3d 404 (Wash. 2001)........................................................................7

**Federal Statutes**

15. U.S.C. § 1681............................................................................................3, 4

15 U.S.C. § 7706(f)(3)(A)-(B).......................................................................11

15 U.S.C. § 7707(b)(1) .................................................................................1, 5, 8

18 U.S.C. § 2710............................................................................................3

28 U.S.C. § 1332(d) .......................................................................................1, 9

28 U.S.C. § 1441............................................................................................1

47 U.S.C. § 227 .............................................................................................3, 11

Pub. L. No. 119 Stat. 5 § 2 (Class Action Fairness Act ) ............................*passim*

DEFENDANT SHEEX, INC'S RESPONSE TO ORDER TO
SHOW CAUSE (DKT. NO. 28)- iv

BALLARD SPAHR LLP
1301 2ND AVE, SUITE 2800
SEATTLE WA 98101-2930
PHONE: 206.223.7000 FAX: 206.223.7107

**State Statutes**

Cal. Bus. & Prof. Code § 17529.5 ...................................................................................10

Ind. Code § 24-5-22-10(d)(2) .........................................................................................10

Mich. Comp. Laws § 445.2508(4)(b) ..............................................................................10

Ohio Rev. Code Ann. § 2307.64(F) .................................................................................11

RCW 19.190 (Commercial Electronic Mail Act) ..................................................... *passim*

RCW 19.86 (Washington Consumer Protection Act) ...........................................1, 11, 12

2274-S.SL (69th Leg. 2026 Reg. Session) (effective date June 11, 2026) ....................10

**Rules**

Fed. R. Civ. P. 12(b)(6) ...................................................................................................1

**Constitutional Provisions**

United States Constitution Article III ..................................................................... *passim*

**Other Authorities**

140 Am. Jur. Proof of Facts 3d 509 (2014) (2025 update) ............................................11

137 Am. Jur. Trials 1 (2014) (2026 update) ..................................................................11

14AA Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure*
    § 3702.3 (4th ed. 2019) ............................................................................................9

Final Bill Report on Engrossed Substitute H.B. 2752, at 1, 55th Leg., Reg. Sess.
    (1998) .......................................................................................................................4

Info. Security & Privacy: A Guide to Fed & State Law & Compliance § 12:94,
    *Damages and enforcement* (2025 update) ..............................................................11

Senate Report No. 109–14, p. 43 (2005) .......................................................................10

Senate Bill Report on Substitute House Bill 2752 (Feb. 23, 1998) ................................4

Senate Report on the Class Action Fairness Act of 2005 Dates of Consideration
    and Passage, S. Rep. 109-14 ...................................................................................10

BALLARD SPAHR LLP
1301 2ND AVE, SUITE 2800
SEATTLE WA 98101-2930
PHONE: 206.223.7000 FAX: 206.223.7107

## I.    INTRODUCTION

Plaintiff Andrew Devivo's Complaint allegations, taken as true, allege an injury under the Commercial Electronic Mail Act ("CEMA") that is sufficient to establish Article III standing. Although Plaintiff does not allege a reliance injury or that he suffered actual damages, as required to survive CAN-SPAM preemption, his Complaint nevertheless implicates the purported injury that the Washington Legislature intended to guard against in enacting CEMA. To be sure, SHEEX, INC. ("SHEEX") maintains that Plaintiff's action is entirely meritless, is preempted by federal law, and should be dismissed under Fed. R. Civ. P. 12(b)(6). (Dkt. No. 20). Nevertheless, removal was proper, and this Court has—and should continue to exercise—jurisdiction over the action.

## II.    BACKGROUND

Plaintiff, a Washington resident, brings two causes of action against SHEEX on behalf of himself and a putative class he seeks to represent. (Dkt. No. 1-1 (Compl.)) First, he claims that SHEEX violated CEMA by sending emails with false or deceptive information in the email subject line, and second, he brings a derivative claim for damages under the Washington Consumer Protection Act ("CPA"). (*Id.* ¶¶ 65-96.) Plaintiff alleges that he received five emails from SHEEX in 2023 and that the subject lines on these emails were "false or misleading" because they "misrepresent[ed] the timing of the deals" advertised. (*Id.* ¶¶ 66-67.) Plaintiff seeks a permanent injunction against SHEEX, an award of actual or liquidated damages, "trebled, according to proof," as well as costs and attorney fees. (*Id.* at 19.)

After removing the action from Washington Superior Court to this Court under 28 U.S.C. § 1441, and 28 U.S.C. § 1332(d) (the Class Action Fairness Act or "CAFA"), SHEEX moved to dismiss Plaintiff's Complaint in its entirety. (Dkt. No. 20.) Plaintiff's CEMA claim (and, consequently, his CPA claim) is expressly preempted by the Controlling the Assault of Non-Solicited Pornography and Marketing ("CAN-SPAM") Act, which "supersedes any statute, regulation, or rule of a State or political subdivision of a State that expressly regulates the use of electronic mail to send commercial messages. . . ." (*Id.* at 7) (citing 15 U.S.C. § 7707(b)(1).)

On March 19, 2026, prior to ruling on SHEEX's Motion to Dismiss, the Court ordered the parties to show cause as to why the case should not be remanded back to the Washington Superior Court for lack

DEFENDANT SHEEX, INC'S RESPONSE TO ORDER TO
SHOW CAUSE (DKT. NO. 28) - 1

BALLARD SPAHR LLP
1301 2ND AVE, SUITE 2800
SEATTLE WA 98101-2930
PHONE: 206.223.7000 FAX: 206.223.7107

of subject matter jurisdiction. (Dkt. No. 28). In its Order, the Court directed the parties to address (1) whether Plaintiff alleges an injury sufficient to establish Article III standing (he does); and (2) whether Plaintiff's Complaint seeks sufficient damages to invoke CAFA's $5,000,000 jurisdictional threshold (it does).

## III.    LEGAL STANDARD

### A.    Article III Standing

To have standing to sue in federal court under Article III of the U.S. Constitution, a plaintiff must plead, and ultimately prove, three elements. A plaintiff must have (i) suffered an "injury in fact"; (ii) that is "fairly traceable" to the challenged action of the defendants; and (iii) that is likely to be redressed by a favorable outcome of the litigation. *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). In response to the Court's Order to Show Cause, SHEEX focuses on Plaintiff's alleged injury. Plaintiff must show that he suffered an injury in fact that is concrete, particularized, and actual or imminent; fairly traceable to the challenged conduct; and likely redressable by a favorable decision. *Lujan*, 504 U.S. at 560-61.

At the pleading stage, courts look to the complaint to determine whether the plaintiff has alleged facts that, if proven, would establish injury-in-fact and the other Article III standing requirements. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (*Spokeo I*); *Warth v. Seldin*, 422 U.S. 490, 518 (1975). The same standard applies on removal. *Coleman-Anacleto v. Samsung Elecs. Am., Inc.*, 2016 WL 4729302, at *5 (N.D. Cal. Sept. 12, 2016) (in ruling on a remand motion, a court may "assume that the allegations of the complaint are true").

### B.    Intangible Statutory Violations, Including Alleged CEMA Violations, Can Constitute an Injury-In-Fact That Establishes Article III Standing.

The Legislative Branch "is well positioned to identify intangible harms that meet minimum Article III requirements," and "its judgment is . . . instructive and important." *Spokeo I*, 578 U.S. at 331. While "Article III standing requires a concrete injury even in the context of a statutory violation," a legislature "has the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before.'" *Id.* (quoting *Lujan*, 504 U.S. at 580 (Kennedy, J., concurring));

DEFENDANT SHEEX, INC'S RESPONSE TO ORDER TO
SHOW CAUSE (DKT. NO. 28) - 2

*see also Warth v. Seldin*, 422 U.S. 490, 514 (1975) ("The actual or threatened injury required by Art[icle] III may exist solely by virtue of 'statutes creating legal rights, the invasion of which creates standing[.]'") (citation omitted); *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017) (concluding that the legislature "has some permissible role in elevating concrete, de facto injuries previously inadequate in law 'to the status of legally cognizable injuries'" and recognizing standing for a claim brought under TCPA) (citing *Spokeo I*, 578 U.S. at 341); *see also Cantrell v. City of Long Beach*, 241 F.3d 674, 684 (9th Cir. 2001) ("[S]tate law can create interests that support standing in federal courts.").

"[S]ome statutory violations, alone, do establish concrete harm." *Robins v. Spokeo, Inc.*, 867 F.3d 1108, 1112-13 (9th Cir. 2017), *cert. denied*, 138 S. Ct. 931 (2018) (*Spokeo II*) (concluding that a consumer's alleged injuries under Fair Credit Reporting Act were *sufficiently* concrete to satisfy injury-in-fact requirement). For instance, where a statute is a "substantive provision that protects concrete interests," a plaintiff need not plead any additional harm beyond a violation of the statute to obtain standing. *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 982-84 (9th Cir. 2017) (analyzing claims brought under Video Privacy Protection Act or "VPPA," 18 U.S.C. § 2710(b)(1), and holding that the VPPA "identifies a *substantive* right to privacy that suffers *any time* a video service provider discloses otherwise private information" and concluding an alleged statutory violation confers Article III standing) (emphasis in original); *see also Van Patten*, 847 F.3d at 1043. And even where a statute does not grant a substantive right, "the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact." *Spokeo I*, 578 U.S. at 342. In such a case, a plaintiff need not allege "any additional harm" beyond what the legislature identified in enacting the statute. *Id.* The only requirement is that a plaintiff allege that he was harmed by a violation of the statute in order to satisfy the injury in fact element for standing. *Id.*

DEFENDANT SHEEX, INC'S RESPONSE TO ORDER TO
SHOW CAUSE (DKT. NO. 28) - 3

## IV.     ARGUMENT

**A.     Plaintiff's Alleged Receipt of Misleading Spam Email Constitutes a Cognizable Injury Under Article III.**

1.     *CEMA's Legislative History Makes Clear That the Statute Was Enacted to Codify Substantive Rights and Protect Against Injuries-in-Fact.*

CEMA was enacted to protect consumers and internet service providers against a wide range of costs associated with spam email and text messages. It is therefore a "substantive provision that protects concrete interests." *Eichenberger*, 876 F.3d at 982; *see also TransUnion LLC v. Ramirez*, 594 U.S. 413, 427 (2021) (evaluating *concreteness* of consumers' alleged injuries under FCRA). The Washington Attorney General's office "request[ed] this legislation," in part because of the rise in consumer complaints relating to spam. *See* Senate Bill Report on Substitute House Bill 2752 (Feb. 23, 1998) at 1 (RJN, Exhibit A); *Cert. from U.S. Dist. Ct. for W. Dist. of Wash. in Brown v. Old Navy*, 4 Wn. 3d 580, 583, 567 P.3d 38 41 (Wash. 2025) ("*Brown v. Old Navy Cert.*") ("The legislature was concerned about the added cost consumers faced when a barrage of commercial e-mails meant that they paid internet providers for time spent sifting through in-boxes cluttered by spam.") (citing Final B. Rep. on Engrossed Substitute H.B. 2752, at 1, 55th Leg., Reg. Sess. (Wash. 1998)). The Washington Legislature observed that spam email, by its nature, clogs consumers' inboxes and invades their privacy. *See, e.g.* Senate Bill Report on Substitute House Bill 2752.CEMA's legislative history makes clear that the statute was enacted to protect consumers' right to be left alone from spam email.

Plaintiff alleges that his rights under CEMA were violated when SHEEX "spammed," "bombarded," "harass[ed]," and "blasted" him and other customers with "spam" emails, which he alleges contained false or misleading email subject lines attempting to induce purchases. (*E.g.*, Compl. ¶¶ 3-7, 29-54.) This is the concrete harm the Washington Legislature envisioned in enacting CEMA and is sufficient to satisfy the requirements of Article III.

2.     *Courts in This District Have Explicitly Held, and the Ninth Circuit Has Implicitly Held, that a CEMA Violation States Sufficient Injury for Article III Standing.*

An injury will satisfy Article III if it is "concrete, particularized, and actual or imminent." *TransUnion*, 594 U.S. at 423. Intangible injuries may be concrete, *Patel v. Facebook, Inc.*, 932 F.3d 1264,

1270 (9th Cir. 2019) (citing *Spokeo I*)—particularly when in "precisely the form the statute was intended to guard against." *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373 (1982); *Vargas v. Facebook, Inc.*, 2023 WL 6784359, at *1 (9th Cir. Oct. 13, 2023); *Magadia v. Wal-Mart Assocs., Inc.*, 999 F.3d 668, 679 (9th Cir. 2021), *abrogated on other grounds*. Further, "[t]he Ninth Circuit has held that an alleged violation of a statutory provision that protects a substantive right is sufficient to establish concrete injury." *Harbers*, 415 F. Supp. 3d at 1005 (citing *Van Patten*, 847 F.3d at 1043); *Spokeo II*, 867 F.3d at 1113 ("*[S]ome* statutory violations, alone, do establish concrete harm.").

As the Court pointed out in its Order, "federal courts are *required* sua sponte to examine jurisdictional issues such as standing." (Dkt. 28 at 2-3) (citation omitted). In evaluating the substance of a plaintiff's CEMA claims, including the contents of certain emails, the Ninth Circuit made an implicit finding of standing under Article III for an injury identical to the present case. *See Gordon v. Virtumundo*, 575 F.3d 1040, 1062-64 (9th Cir. 2009) (affirming dismissal of CEMA claims based on CAN-SPAM preemption); *see also Silverstein v. Keynetics, Inc.*, 727 F. App'x 244, 245-46 (9th Cir. Mar. 6, 2018) (affirming dismissal of claims brought under California's anti-spam law); *Silverstein v. Keynetics, Inc.*, 2018 WL 5795776, at *10 (C.D. Cal. Nov. 5, 2018) ("Because the district court and the Ninth Circuit reached decisions on the merits of Plaintiff's claim, each made an implicit finding of standing under Article III."). The Court in *Virtumundo* evaluated the plaintiff's claims regarding allegedly deceptive email subject lines, indirectly finding a sufficiently concrete injury under Article III to maintain jurisdiction. Notably, the Court found it necessary to analyze whether plaintiff had statutory standing to bring a private action under CAN-SPAM, ultimately concluding he did not. *Virtumundo*, 575 F.3d at 1066.

Courts in this district have also *explicitly* concluded that injuries identical to those alleged by Plaintiff here confer standing. In *Harbers v. Eddie Bauer, LLC*, a plaintiff brought a class action for statutory damages only, alleging a retailer violated CEMA by sending emails with misleading subject lines. 415 F. Supp. 3d 999, 1001-02 (W.D. Wash. 2019). Following removal, the plaintiff claimed she lacked standing and sought remand. But the court disagreed and held that the receipt of allegedly deceptive commercial emails in violation of CEMA alone—without more—conferred Article III standing. *Id.* at 1008-11. The *Harbers* court reasoned: (1) CEMA was "enacted to protect concrete interests"; (2) the

DEFENDANT SHEEX, INC'S RESPONSE TO ORDER TO
SHOW CAUSE (DKT. NO. 28) - 5

BALLARD SPAHR LLP
1301 2ND AVE, SUITE 2800
SEATTLE WA 98101-2930
PHONE: 206.223.7000 FAX: 206.223.7107

plaintiff alleged a violation of her substantive right "to be free from deceptive commercial e-mails, which suffers anytime a prohibited message is transmitted,"; and (3) that this "satisfies the concreteness requirement, *even absent additional allegations of harm*." *Id*. at 1008-09 (emphasis added); *see also In re Equifax Inc. Customer Data Sec. Breach Litig*., 999 F.3d 1247, 1262 (11th Cir. 2021) ("wasted time" is a concrete injury under Article III); *Reichman v. Poshmark, Inc*., 267 F. Supp. 3d 1278, 1284 (S.D. Cal. 2017) (wasted time due to unwanted text messages); *Booth v. Appstack, Inc*., 2016 WL 3030256, at *5 (W.D. Wash. May 25, 2016) ("waste[d] time answering or otherwise addressing widespread robocalls").

The *Harbers* court went on state that even if the plaintiff "allege[d] only a procedural CEMA violation," the alleged CEMA violation would nonetheless be "sufficient to confer Article III standing." *Id*. at 1009-10. Because the plaintiff's receipt of deceptive emails "pose[s] a risk to [her] interest in being free from the nuisance and loss of productivity," the court found that she "need not allege any additional harm beyond the CEMA violations to allege a concrete injury-in-fact." *Id*. at 1010-11; *see also Silverstein*, 2018 WL 5795776, at *10 (explaining that Article III would be satisfied even if anti-spam law were interpreted as being procedural rather than substantive). Thus, even if CEMA were deemed to codify a procedural rather than substantive right, the concreteness requirement of Article III standing would be established. *Harbers*' logic compels the same result here.

### 3. *Plaintiff Alleges an Injury-in-Fact.*

In *Harbers*, the court concluded the alleged receipt of misleading spam emails confers standing under Article III because: (1) the resulting harm closely resembles injuries sounding in nuisance; and (2) CEMA was enacted precisely to shield consumers from the associated intrusion, distraction, and cost. 415 F. Supp. 3d at 1005. Plaintiff pleads precisely such injuries in his Complaint.

Plaintiff alleges that SHEEX violated CEMA by "spamm[ing]," "bombard[ing]," "harassing," and "blast[ing]" Plaintiff and other customers with "spam" emails containing false or misleading email subject lines attempting to induce purchases. (Compl. ¶¶ 4-7, 29-66.) Plaintiff alleges that the sheer volume of emails SHEEX sends to possible customers "chokes consumers' email inbox with repeated false notifications" regarding the timing of promotions or deals. (*Id.* ¶¶ 4-5.) These allegations "satisfy the concreteness requirement, *even absent additional allegations of harm*." *Harbers*, 415 F. Supp. 3d at 1008-

DEFENDANT SHEEX, INC'S RESPONSE TO ORDER TO
SHOW CAUSE (DKT. NO. 28) - 6

BALLARD SPAHR LLP
1301 2ND AVE, SUITE 2800
SEATTLE WA 98101-2930
PHONE: 206.223.7000 FAX: 206.223.7107

09. Even if the Court concludes that Plaintiff's allegations that he received misleading or deceptive emails clogging his inbox only amount to procedural or nuisance harm, this harm is still sufficient to confer Article III standing. *See id.* at 1009-10.

Moreover, Plaintiff need not allege that he relied on any email to make a purchase to establish Article III standing. *Chin v. Evergreen Freedom Found.*, 764 F. Supp. 3d 924, 934 (C.D. Cal. 2025) (receipt of deceptive email "suffices to satisfy the concreteness requirement of Article III standing"—even absent "financial harm"). The Western District of Washington continues to apply *Harbers* following *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021) to evaluate standing, including where, as here, no detrimental reliance on the alleged misstatement is pled. *E.g.*, *Brinton v. Vivint Inc.*, 2024 WL 3688589, at *3 (W.D. Wash. Aug. 7, 2024) ("This Court agrees with the other district courts that have found receipt of spam emails to be a concrete injury that establishes Article III standing.").[1] These precedents comport with the purpose and legislative history of CEMA, which stress the same harms Plaintiff alleges—i.e., being "bombarded" with spam, clogged email inboxes, manipulation of decision making from misleading advertisements. (Compl. ¶¶ 4-7, 29-66); *compare with Aaland v. CRST Home Sols., LLC,* 575 P.3d 1279, 1284 (Wash. Ct. App. 2025) ("The legislature was particularly concerned about the rising volume of commercial e-mails and the costs absorbed by consumers by paying internet providers for the time required to sift through their in-boxes cluttered with commercial e-mail spam."); *accord State v. Heckel*, 24 P.3d 404, 409-10 (Wash. 2001).

---

[1] Judge Robart's logic in *Harbers* survives *Spokeo* and *TransUnion*. *See Whittaker v. Tactical USA LLC*, 2024 WL 1855645, at *6 (E.D. Cal. Apr. 29, 2024) ("*Plaintiffs did not need to allege any harm beyond receiving the emails*" to "confer Article III standing") (emphasis added); *Lynch v. AML Network Ltd.*, 2021 WL 4453470, at *5 (C.D. Cal. Sep. 27, 2021) (rejecting "*flawed premise*" that additional harm—beyond the plaintiffs' receipt of deceptive emails—is necessary; rather, "[t]he *transmission and receipt* of these emails" constitutes "an injury in fact sufficient [to] confer Article III standing") (emphasis added); *Silverstein*, 2018 WL 5795776, at *9 (finding California's CEMA analogue "codifies a substantive right to be protected from spam" and "protects interests and prohibits behavior that are similar to those at issue in actions for nuisance"); *see also Hoffman v. One Techs., LLC*, 2017 WL 176222, at *2 (W.D. Wash. Jan. 17, 2017) (alleged CEMA violation based on receipt of phishing emails, resulting in "usurpation" of storage space, is "sufficiently concrete and particularized to establish Article III standing"—even absent plaintiff's detrimental reliance on any email).

Plaintiff, in alleging SHEEX "spammed," "bombarded," "harass[ed]," and "blasted" him and other customers with "spam" emails containing false or misleading email subject lines attempting to induce purchases, pleads a concrete injury sufficient to confer Article III standing. This Court's continued exercise of jurisdiction is therefore proper.

### 4.    *Preemption and Article III are Different Standards*

The invocation of this Court's jurisdiction in the Notice of Removal (Dkt. No. 1) comports with the preemption argument advanced in the Motion to Dismiss. SHEEX's central argument in its Motion was that CAN-SPAM preempted Plaintiff's claims. (Dkt. No. 20.) SHEEX therefore focused on Plaintiff's failure to allege the narrow types of injuries able to survive CAN-SPAM preemption (*Id.* at 12-20.). Under *Gordon v. Virtumundo, Inc.*, the only types of CEMA claims exempted from CAN-SPAM preemption are claims involving "traditionally tortious or wrongful conduct." 575 F.3d at 1063. Thus, to survive CAN-SPAM preemption, Plaintiff must show that his claims are consistent with traditional "torts involving misrepresentations." "Traditional claims for fraud or misrepresentation," in turn, require more than the mere receipt of a deceptive statement; they *also* require proof of numerous additional elements, including "materiality," "reliance" on the alleged misstatement, and "actual damages" due to such reliance. (Dkt. No. 20 at 18-20 (*see authority cited*).) As argued by SHEEX, because Plaintiff fails to allege that he saw or relied upon any of the emails, or was injured due to such reliance, his claims cannot satisfy the elements of a traditional misrepresentation tort and are preempted by CAN-SPAM. (*See id.*)

But the CAN-SPAM preemption analysis does not foreclose Article III standing. Under Article III jurisprudence, Plaintiff's alleged receipt of voluminous, deceptive spam constitutes a cognizable injury under Article III. *See supra* Section A(1)-(3). These disparate results do not evidence a logical inconsistency in SHEEX's submissions. Instead, they reflect substantive differences in: (a) the type of injury required to establish Article III standing under *Harbers*, on the one hand; and (b) the injury required to survive federal preemption under *Virtumundo*, on the other. The injury required under Article III often diverges from the injury required to establish an underlying cause of action. *See, e.g.*, *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1053 (S.D. Cal. 2023) (Article III standing was satisfied but plaintiff "fail[ed] to allege a cognizable injury under the UCL" because the UCL "demands more: a plaintiff must

DEFENDANT SHEEX, INC'S RESPONSE TO ORDER TO
SHOW CAUSE (DKT. NO. 28) - 8

show 'economic injury'"); *Jones*, 85 F.4th at 574-75. Although Plaintiff's alleged injuries are insufficient to survive preemption, they confer standing under Article III.

**B.    CAFA Removal Is Supported by the Complaint Allegations and CEMA's Statutory Language.**

1.    *The Court Must Afford Deference to Plaintiff's Statements About the Damages He Seeks When Deciding Whether the Jurisdictional Amount in Controversy Is Met.*

To satisfy the amount in controversy requirement and establish federal jurisdiction, a defendant may point to many different types of evidence. *Flores v. Safeway, Inc.*, 2019 WL 4849488, at *3 (W.D. Wash. Oct. 1, 2019) (citing 14AA Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3702.3 (4th ed. 2019)). "A particularly powerful form of evidence is the plaintiff's own statements about the damages they seek." *Id.* (citing, *inter alia*, *Cohn v. Petsmart, Inc.*, 281 F.3d 839, 840 (9th Cir. 2002) (denying remand because the plaintiff said in a demand letter that his trademark was worth more than $100,000); *Cruz v. Wal-Mart Stores, Inc.*, 2017 WL 3394308, at *2 (D. Nev. 2017) (determining the amount in controversy by looking to an expenses table the plaintiff included in her request for exemption from arbitration)). "While a defendant may not establish the amount in controversy through [its] own conclusory allegations, a plaintiff's statement of damages is not a 'conclusory allegation'; it is direct evidence of the value that the plaintiff places on their case . . . . This is true even if the statement does not lay out in detail the basis for the plaintiff's estimate of their damages." *Id.* at *5; *Jefferson v. Walmart Inc.*, 2025 WL 1616799, at *2 (C.D. Cal. June 5, 2025). Moreover, a party's "potential defense to [a] state court action that [a] damages limitation restricts recovery [below a jurisdictional threshold amount] . . . does not preclude federal jurisdiction. *Geographic Expeditions, Inc. v. Est. of Lhotka ex rel. Lhotka*, 599 F.3d 1102, 1108 (9th Cir. 2010) ("As the Supreme Court has explained, 'the fact that the complaint discloses the existence of a valid defense to the claim' does not eliminate federal jurisdiction, nor do events 'occurring subsequent to the institution of suit which reduce the amount recoverable below the statutory limit.'"); *Kinzie Advanced Polymers LLC v. Highopes LLC*, 2024 WL 4803515, at*3-4 (W.D. Wash. Nov. 15, 2024).

A civil action is properly removed to federal court under CAFA where: (1) the alleged amount in controversy exceeds the sum of $5,000,000 exclusive of costs and interest, (2) the proposed putative class has more than 100 members; and (3) and is between citizens of different states. 28 U.S.C. § 1332(d).

Unlike other civil actions, "no antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 81 (2014); *see also Stand. Fire Ins. Co. v. Knowles*, 568 U.S. 588, 595 (2013) ("CAFA's primary objective" is to "ensur[e] 'Federal court consideration of interstate cases of national importance.'" (quoting § 2(b)(2), Pub. L. No. 119 Stat. 5)); S. Rep. No. 109–14, p. 43 (2005) (CAFA's "provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant."). Even if a court "is uncertain about whether all matters in controversy in a purported class action do not in the aggregate exceed the sum or value of $5,000,000, the court should err in favor of exercising jurisdiction over the case." Senate Report on the Class Action Fairness Act of 2005 Dates of Consideration and Passage, S. Rep. 109-14.

Here, Plaintiff alleges that SHEEX violated CEMA, which allows for "[d]amages to the recipient of a commercial electronic mail message or a commercial electronic text message sent in violation of this chapter" of "five hundred dollars, or actual damages, whichever is greater." [2] RCW 19.190.040(1); *Brown v. Old Navy Cert.*, 567 P. 3d at 42 ("Under CEMA, the injury is receiving an email that violates its regulations.")

Washington District Courts have understood CEMA to permit recovery of statutory damages of $500 per violative email. *See, e.g.*, *Harbers*, 415 F. Supp. At 1003-04. The statutory penalty is calculated at $500 per violation, which plaintiff's claim means per email sent to each recipient rather than a single amount per recipient regardless of the number of emails. *See id.* Other states' CEMA analogs largely contain an identical damages scheme, which allow for damages calculated for each violative email transmission. *E.g.*, Cal. Bus. & Prof. Code § 17529.5 (liquidated damages of one thousand dollars ($1,000)

---

[2] The statutory penalty was recently reduced to $100 with passage of 2274-S.SL (69th Leg. 2026 Reg. Session) (effective date June 11, 2026). The legislative change does not apply to cases such as this one which were enacted before the effective date.

DEFENDANT SHEEX, INC'S RESPONSE TO ORDER TO
SHOW CAUSE (DKT. NO. 28) - 10

for each unsolicited commercial e-mail advertisement transmitted in violation of this section); Ind. Code § 24-5-22-10(d)(2) (2006) (liquidated damages of $500 for each unsolicited commercial e-mail message may be recovered in lieu of actual damages); Mich. Comp. Laws § 445.2508(4)(b) (2002 & Supp. 2007) ($500 per unsolicited commercial e-mail message or $250,000 for each day of violation, whichever is less); Ohio Rev. Code Ann. § 2307.64(F) (2004 & Supp. 2007) (for violations of the civil laws, recipient may recover $100 per violation, not to exceed $50,000).[3]

Likewise, violations of the CAN-SPAM Act are subject to statutory penalties of $250 per violating email, up to a maximum of $2,000,000. 15 U.S.C. § 7706(f)(3)(A)-(B). The Ninth Circuit has recognized that CEMA "provides for greater per-violation statutory damages than the CAN-SPAM Act," and permits recipients able to recover "$500 per violation." *Virtumundo*, 575 F.3d at 1057 n.16. This framework aligns with similar federal statutes like the Telephone Consumer Protection Act (TCPA), where statutory damages of $500 are awarded <u>per</u> unauthorized call or message, potentially trebled for willful violations. 47 U.S.C. § 227. This structure incentivizes compliance by enabling multiple recoveries based on the number of infringing communications rather than limiting recovery to a single penalty per injured party. *See* 140 Am. Jur. Proof of Facts 3d 509 (2014) (2025 update); 137 Am. Jur. Trials 1 (2014) (2026 update).

2.    *SHEEX Establishes, by a Preponderance of the Evidence, that Removal Was Proper Under CAFA.*

Plaintiff seeks $500 in statutory damages per violative email sent by SHEEX. (Compl. ¶¶ 69, 96.). Plaintiff alleges that he received at least five emails from SHEEX that violated CEMA's provisions. (*Id.* ¶ 66.) He further alleges that SHEEX has, since 2022, been sending marketing emails to class members at a rate of at least "300 per year, 30 per month, and 1 per day." (*Id.* ¶ 56.) Plaintiff's preliminary class definition includes "[a]ll Washington citizens" who received one or more of fourteen marketing emails from SHEEX between September 2021 and class certification. (*Id.* ¶¶ 69, 71.) Plaintiff estimates the proposed class size "minimally contain[s] thousands of members," and he reserves the right to amend the

---

[3] *See also* Info. Security & Privacy: A Guide to Fed & State Law & Compliance § 12:94, *Damages and enforcement* (2025 update) (analyzing N.D. law).

DEFENDANT SHEEX, INC'S RESPONSE TO ORDER TO
SHOW CAUSE (DKT. NO. 28) - 11

BALLARD SPAHR LLP
1301 2ND AVE, SUITE 2800
SEATTLE WA 98101-2930
PHONE: 206.223.7000 FAX: 206.223.7107

class definition to include other emails that class members received from SHEEX. (*Id.* ¶¶ 72-73.) Plaintiff further seeks treble damages of $1,500 per "violation" under the CPA (*E.g.*, *id.* ¶ 96).

In its Notice of Removal, SHEEX calculated that, based on Plaintiff's good faith allegations and requested relief, the amount in controversy would be more than satisfied if 2,000 customers received just two emails ($1,500/violation x2 emails x 2,000 Washington customers = $6,000,000), exclusive of any attorney fees or costs. (Dkt. No. 1 ¶¶ 20-22.) SHEEX's preliminary damage calculations presented at the removal stage were conservatively based on the number of emails Plaintiff alleges he received. But SHEEX's review of its subscriber listserv shows at least 5,788 individuals with an address in Washington who were signed up to receive SHEEX advertising emails since September 2021. Declaration of William Robert Price ("Price Decl.") ¶ 4. Hypothetically, if all 5,788 of the individuals with Washington addresses received all 14 emails alleged in Plaintiff's complaint, SHEEX's potential damages exposure under CEMA, based on Plaintiff's allegations, could be in excess of $40,000,000 [$500/violation x14 emails x 5,788 Washington customers = $40,516,000], far surpassing CAFA's minimum alleged amount in controversy of $5,000,000.  This does not even factor in Plaintiff's allegations of treble damages or attorney fees.

In its Order, the Court suggests that the language of CEMA is unclear as to whether each email sent constitutes a separate violation under CEMA, or whether multiple emails to the same recipient constitute a single compensable injury. (Dkt. No. 28 at 5) This reading would result in a smaller amount in controversy "approximately $3,000,000," less than CAFA's floor. (*Id.*).  As previously discussed, this interpretation is contrary to other decisions in this District applying CEMA, the Ninth Circuit's rationale in *Virtumundo*, analogous state and federal statutes, and CEMA's plain text. *See* RCW 19.190.040(1) ("Damages to the recipient of *a* commercial electronic mail message . . . are five hundred dollars.") (emphasis added). But even if Plaintiff and class members were each only eligible to recover for one violation under CEMA, Plaintiff seeks an award of the greater of $500 or actual or liquidated damages, "trebled" per "violation" under the CPA (*E.g.*, Compl. ¶ 96), and SHEEX has 5,788 potential subscriber accounts based in Washington that potentially received marketing emails or advertisements in the proposed class period. Price Decl. ¶ 4. Under this approach, if Plaintiff were to prove at least $500 in

DEFENDANT SHEEX, INC'S RESPONSE TO ORDER TO
SHOW CAUSE (DKT. NO. 28) - 12

BALLARD SPAHR LLP
1301 2ND AVE, SUITE 2800
SEATTLE WA 98101-2930
PHONE: 206.223.7000 FAX: 206.223.7107

actual or liquidated damages and that amount is then trebled under the CPA, SHEEX faces potential damages exposure of $8,682,000 [$1,500/violation x 5,788 Washington customers], exceeding CAFA's statutory minimum. *See Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 375 (9th Cir. 1997) ("If the claim was 'apparently made in good faith,' then the sum claimed by the plaintiff controls for removal purposes unless "it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed.").

Accordingly, SHEEX sufficiently supports its removal under CAFA based on the allegations of the operative Complaint.

## V.    CONCLUSION

For the stated reasons, Plaintiff has pleaded Article III standing. This Court's continued exercise of jurisdiction is proper, and the Court should not remand the action to Washington Superior Court.

DATED: April 2, 2026.

BALLARD SPAHR LLP

By:  */s/ Callie A. Castillo*

Meegan B. Brooks, WSBA No. 62516
Callie A. Castillo, WSBA No. 38214
Erika O'Sullivan, WSBA No. 57556
1301 2nd Ave, Suite 2800
Seattle, WA 98101-2930
206.223.7000
brooksm@ballardspahr.com
castilloc@ballardspahr.com
osullivane@ballardspahr.com

*Attorneys for Defendant SHEEX, INC*

I certify that this memorandum contains 4871 words in compliance with the Local Civil Rules.

DEFENDANT SHEEX, INC'S RESPONSE TO ORDER TO
SHOW CAUSE (DKT. NO. 28) - 13

**CERTIFICATE OF SERVICE**

I hereby certify that on April 2, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of this filing to all attorneys of record.

DATED this 2nd day of April, 2026.

/s/ Callie A. Castillo
 Callie A. Castillo

*Attorneys for Defendant SHEEX, INC*

DEFENDANT SHEEX, INC'S RESPONSE TO ORDER TO
SHOW CAUSE (DKT. NO. 28) - 14

BALLARD SPAHR LLP
1301 2ND AVE, SUITE 2800
SEATTLE WA 98101-2930
PHONE: 206.223.7000 FAX: 206.223.7107