UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ANDREW DEVIVO,

                Plaintiff,

     v.

SHEEX INC.,

                Defendant.

CASE NO. 3:25-cv-05807-DGE

ORDER ON STANDING, MOTION TO DISMISS, AND MOTION TO STAY

## I       INTRODUCTION

This proposed class action is part of the flood of litigation pending in courts in this district related to the Washington Commercial Electronic Mail Act ("CEMA"). Before the Court are the Parties' responses (Dkt. Nos. 29, 32) to the Court's order to show cause regarding standing (Dkt. No. 28), Defendant's motion to dismiss (Dkt. No. 20), and Defendant's motion to stay (Dkt. No. 35). For the reasons that follow, the Court is satisfied that Article III standing and subject matter jurisdiction have been established at this point in the litigation. Defendant's motion to dismiss (Dkt. No. 20) is DENIED because CEMA is not preempted by federal law.

ORDER ON STANDING, MOTION TO DISMISS, AND MOTION TO STAY - 1

Accordingly, Defendant's motion to stay pending the outcome of the motion to dismiss (Dkt. No. 35) is DENIED as moot.

## II    BACKGROUND

### A. Factual Background

Plaintiff alleges Defendant has violated CEMA and the Washington Consumer Protection Act ("CPA") by "bombard[ing] Washington consumers, including Plaintiff, with commercial emails whose subject lines employ various tactics to create a false sense of urgency in consumers' minds—and ultimately, from consumers' wallets." (Dkt. No. 1-1 at 7.)  Such false urgency, according to Plaintiff, "wastes consumers' time by enticing them to engage with [Defendant]'s marketing for fear of missing out and chokes consumers' email inboxes with repeated false notifications" that they must act now to receive the advertised deals.  (*Id.*)  As an example in his complaint, Plaintiff points to the "False Limited Time Message," where marketers create pressure to buy immediately "by saying the offer is good only for a limited time or that the deal ends soon—but without a deadline or with a meaningless deadline that just resets when reached."  (*Id.* at 10.)  Plaintiff also cites to "Urgent Spam Emails," where Defendant "lur[es] in consumers through an urgent subject heading that does not reflect the true availability of the deal itself[.]"  (*Id.* at 11.)  Plaintiff cites to various examples of marketing emails sent by Defendant which advertise deals available for a limited time, only for Defendant to extend the deal for another day or sometimes several days.  (*Id.* at 11–13.)

### B. Procedural History

Plaintiff initiated this lawsuit on August 4, 2025, in Pierce County Superior Court.  (Dkt. No. 1-1 at 6.)  On September 10, Defendant filed a notice of removal, removing Plaintiff's

ORDER ON STANDING, MOTION TO DISMISS, AND MOTION TO STAY - 2

complaint to federal court. (Dkt. No. 1.) Defendant asserts both diversity and Class Action Fairness Act ("CAFA") jurisdiction. (*Id.*)

On December 12, 2025, Defendant moved to dismiss Plaintiff's complaint in its entirety, arguing Plaintiff's CEMA claim fails because it is preempted by the federal Controlling the Assault of Non-Solicited Pornography and Marketing ("CAN-SPAM") Act. (Dkt. No. 20 at 7.) Defendant asserts that while there is a "narrow carve-out" for state laws prohibiting "falsity or deception" in email communications, 15 U.S.C. § 7707(b)(1), Plaintiff's claim does not fall within that carve-out because he does not allege "traditional tort theories" as required by applicable Ninth Circuit precedent. (Dkt. No. 20 at 7–8) (citing *Gordon v. Virtumundo Inc.*, 575 F.3d 1040, 1061–1063 (9th Cir. 2009)). Defendant further argues that even if Plaintiff's claim was not preempted, it fails to meet the pleading standards required by Federal Rules of Civil Procedure 8 and 9(b), (Dkt. No. 20 at 8.) In response, Plaintiff argues he is not required to prove common law fraud or any other tort to avoid preemption and that Defendant's interpretation overreads the statute and its requirements. (Dkt. No. 24 at 10–15.) Plaintiff further argues that if applicable, his allegations meet the heightened pleading standards under Rule 9(b). (*Id.* at 20–21.)

While the motion to dismiss was pending, on March 19, 2026, the Court sua sponte issued an order to show cause requesting the Parties submit briefing explaining why this case should not be remanded to state court for lack of subject matter jurisdiction. (Dkt. No. 28.) Specifically, the Court was concerned that the statutory prohibition in CEMA was insufficient to establish an injury-in-fact for Article III purposes, and further, that Defendant had not put forth sufficient evidence to show whether the amount in controversy had been satisfied under the

ORDER ON STANDING, MOTION TO DISMISS, AND MOTION TO STAY - 3

CAFA requirements.  (*Id.* at 3–5.)  The Parties responded on April 2, 2026 (Dkt. Nos. 29, 32) and were largely in accord on the legal bases supporting standing.

On April 8, 2026, Defendant filed a motion to stay pending the Court's decision on the motion to dismiss.  (Dkt. No. 35.)  Defendant argued that because its motion to dismiss was potentially dispositive of the entire case, and because no discovery was necessary for the Court to decide on the motion to dismiss, there was no need for the Parties to begin engaging in discovery at this point.  (*Id.* at 5–6.)  Plaintiff argued the motion to dismiss should not be viewed as case-dispositive because there were several other recent decisions from courts in this district denying similar motions to dismiss and further, Plaintiff asserted a stay would both prejudice him and slow down the progress of the case.  (Dkt. No. 37 at 4–7.)

The above matters are fully briefed and are ripe for disposition.

### III    DISCUSSION

#### A.  Article III Standing

The Court adopts and incorporates its analysis on Article III standing in its order denying the motion to dismiss in *Liss et al. v. Skechers USA Inc.*, Case No. 3:25-cv-05861-DGE, Dkt. No. 42 at 4–6.  Here, Plaintiff alleges Defendant "bombards Washington consumers . . . with commercial emails whose subject lines employ various tactics to create a false sense of urgency in consumers' minds[.]"  (Dkt. No. 1-1 at 7.)  He alleges such false urgency "wastes consumers' time" and "chokes consumers' email inboxes with repeated false notifications[.]"  (*Id.*)  Plaintiff alleges he received five emails from Defendant "in violation of his right to be free from such annoyance and harassment under CEMA."  (*Id.* at 14–15.)  Plaintiff contends the emails violated CEMA because they misrepresented the timing of various sales Defendant was holding and contained false information about the availability of the promotions advertised.  (*Id.*) (citing

ORDER ON STANDING, MOTION TO DISMISS, AND MOTION TO STAY - 4

*Certification from U.S. Dist. Ct. for W. Dist. of Wash. in Brown v. Old Navy, LLC*, 567 P.3d 38, 44, 46–47 (Wash. 2025) (en banc)).  Consequently, the alleged CEMA violation is "necessarily an allegation" that Defendant caused Plaintiff "the kind of concrete injury that the Washington Legislature sought to prevent in enacting CEMA." *Harbers v. Eddie Bauer, LLC*, 415 F. Supp. 3d 999, 1009 (W.D. Wash. 2019).  The Court concludes Plaintiff "has suffered injury in precisely the form the statute was intended to guard against[.]" *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373 (1982).  Therefore, Plaintiff has established a concrete injury for purposes of Article III.[1]

**B.  CAFA Jurisdiction**

The Court incorporates and adopts the analysis of CAFA jurisdiction from its order in *Liss*.  *Liss*, Dkt. No. 42 at 8–9.

Here, the Parties agree the amount in controversy exceeds $5 million.  (Dkt. Nos. 29 at 6–12; 32 at 15–17.)  Plaintiff seeks statutory damages for *each* message sent in violation of CEMA, as well as treble damages under both CEMA and the CPA.  (Dkt. No. 1-1 at 18–19.)  Defendant maintains a reading of CEMA that limits recovery to $500 per recipient (rather than per email) is "contrary to other decisions in this District applying CEMA, the Ninth Circuit's rationale in *Virtumundo,* analogous state and federal statutes, and CEMA's plain text."  (Dkt. No. 32 at 18.)  In its notice of removal, Defendant calculated the amount in controversy as follows: (1) $1,500 per violation (treble CEMA's statutory damage amount of $500 per violation), (2) the estimated number of class members ("2,000 Washington customers") and (3) the number of emails

---

[1] The Court further incorporates and adopts the analysis from *Liss* distinguishing the Article III analysis in *Nuri v. True Religion Apparel et al.*, Case No. 2:25-cv-00690-LK, because here, like in *Liss*, Plaintiff does not allege that he consented to receive emails from Defendant.  *Liss*, Dkt. No. 42 at 7–8; (*see generally* Dkt. No. 1-1.)

ORDER ON STANDING, MOTION TO DISMISS, AND MOTION TO STAY - 5

received (at least two).  (*See* Dkt. No. 1 at 6.)  Consistent with *Liss*, the Court concludes Defendant's assumptions as to how the amount in controversy is satisfied do not appear unreasonable, and therefore, CAFA jurisdiction is satisfied.  *Liss*, Dkt. No. 42 at 9.[2]

### C. Plaintiff Has Alleged Sufficient Facts to Establish that Subject Lines are False or Misleading

Defendant first contends that Plaintiff misrepresents the nature of the challenged emails.  Defendant posits, "the subject lines on the emails Plaintiff received accurately reflect that certain special promotions are ending soon" and therefore, that Plaintiff fails to state a claim.  (Dkt. No. 20 at 10.)  To support this conclusion, Defendant identifies that one of emails Plaintiff alleges he received contains a subject line that is accurate when read in context with the body of the email.  (*Id*.)  As for another type of email, Defendant argues the email subject line, read literally, is not false or misleading.  (*Id*. at 10–11.)  In response, Plaintiff argues the complaint identifies that the email subject lines are misleading and false because they employ "false time-scarcity tactics" meant to manipulate consumers into purchasing products.  (Dkt. No. 24 at 16–20.)

At this stage, the Court finds the complaint alleges sufficient facts to support a CEMA claim.  There appears to be a question of fact raised as to whether a consumer receiving the emails in question would be misled or deceived into purchasing products based on the email subject lines identified.  Only after a full record is developed and presented will the Court be in a position to determine whether the matter should proceed to trial before the trier of fact.

---

[2] As a final note, "[e]ven when defendants have persuaded a court upon a CAFA removal that the amount in controversy exceeds $5 million, they are still free to challenge the actual amount of damages in subsequent proceedings and at trial." *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1198 n.1 (9th Cir. 2015).

**D. CAN-SPAM Preemption**

The Court incorporates and adopts its CAN-SPAM preemption analysis from *Liss* and finds that CEMA is not preempted. *See Liss*, Dkt. No. 42 at 10–13.

**E. Rule 9(b) Heightened Pleading Standard**

The Court incorporates and adopts its Rule 9 analysis from *Liss* and concludes that Plaintiff has sufficiently pled fraud for purposes of Rule 9(b) at this stage. *See Liss*, Dkt. No. 42 at 13–14. Specifically, he meets this standard by alleging that since 2022, Defendant "has been blasting out marketing emails" with misleading subject lines that create false time scarcity and "corral consumers to purchase its products." (Dkt. No. 1-1 at 11–13.) Taking these allegations as true, they are sufficient to give Defendant "notice of the particular misconduct which is alleged to constitute the fraud charged[.]" *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001) (citation and quotation marks omitted). Plaintiff has therefore satisfied Rule 9(b)'s particularly requirement.

**F. CPA Claim**

Defendant argues that because Plaintiff's CEMA claim fails as a matter of law, his CPA claim, which is grounded in CEMA violations, must also fail. (Dkt. No. 20 at 22.) However, because Plaintiff's CEMA claim survives Defendant's motion to dismiss, his CPA claim does as well.

## IV    CONCLUSION

Defendant's motion to dismiss (Dkt. No. 20) is DENIED. Defendant's motion to stay pending the outcome of the motion to dismiss (Dkt. No. 35) is likewise DENIED as moot.

ORDER ON STANDING, MOTION TO DISMISS, AND MOTION TO STAY - 7

Dated this 16th day of June 2026.

David G. Estudillo
United States District Judge

ORDER ON STANDING, MOTION TO DISMISS, AND MOTION TO STAY - 8